**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

ERIC WILL, et al.,             )

                        )

            Plaintiffs,     )    Case No.  06-698-GPM

                        )

vs.                      )    Judge G. Patrick Murphy

                        )

GENERAL DYNAMICS CORPORATION )    Mag. Judge Clifford J. Proud

                        )

        Defendant.     )


**GENERAL DYNAMICS CORPORATION'S RESPONSE
<u>IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>**


Craig C. Martin
Daniel J. Winters
Amanda S. Amert
Reena R. Bajowala
JENNER & BLOCK LLP
330 North Wabash Avenue
Chicago, Illinois  60611-7603
Telephone:  (312) 923-2776

*Attorneys for General Dynamics
  Corporation*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................1

FACTUAL BACKGROUND ..........................................................................................2

ARGUMENT ..................................................................................................................8

I.   PLAINTIFFS' REQUEST TO CERTIFY A GENERIC ERISA BREACH OF
     FIDUCIARY DUTY CLASS SHOULD BE DENIED. ..........................................9

II.  THE NAMED PLAINTIFFS ARE INADEQUATE TO SERVE AS CLASS
     REPRESENTATIVES ............................................................................................13

III. CLASS CERTIFICATION IS NOT APPROPRIATE FOR CERTAIN CLAIMS
     AND DEFENSES UNDER ANY CIRCUMSTANCE .........................................16

     A.   Plaintiffs' Failure-To-Disclose Claims Are Not Appropriate For Class
          Certification ..................................................................................................17

     B.   ERISA Section 404(c) Precludes Class Certification For Claims Based On
          Individual Participants' Investment Decisions ............................................19

IV.  THE PROPOSED CLASS DEFINITION IS OVERBROAD...............................21

     A.   Any Class Definition Should Be Limited To Those Plans In Which Plaintiffs
          Participated and the Funds In Which They Invested ....................................21

     B.   Any Class Definition Should Be Narrowed To The ERISA Statute of
          Limitations Period..........................................................................................23

     C.   Any Class Definition Should Not Include Future Participants ....................24

     D.   Any Class Should Be Certified Under Rule 23(b)(1) or Rule 23(b)(2) ........25

CONCLUSION...............................................................................................................25

APPENDIX......................................................................................... Filed Separately

# TABLE OF AUTHORITIES

## CASES

Tab

Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997) ...............................................8, 9, 24, 25

Ballone v. Eastman Kodak Co., 109 F.3d 117 (2d Cir. 1997) ........................................................17

Berger v. Compaq Computer Corp., 257 F.3d 475 (5th Cir. 2001) ...............................................14

Berger v. Xerox Corp. Retirement Income Guarantee Plan, 338 F.3d 755 (7th Cir. 2003) ...........8

Brock v. Robbins, 830 F.2d 640 (7th Cir. 1987) .........................................................................17

Call v. Ameritech Mgmt. Pension Plan, 3:01-cv-00717-GPM-CJP (S.D. Ill. Aug. 26, 2003)........8

Clay v. America Tobacco Co., 188 F.R.D. 483 (S.D. Ill. 1999)..................................10, 16, 24, 25

Coffin v. Bowater Inc., 228 F.R.D. 397 (D. Me. 2005)................................................................19

Cooper v. IBM Personal Pension Plan, 3:99-cv-00829-GPM-PMF (S.D. Ill. Sept. 17,
    2001) .....................................................................................................................................8, 23

Darvin v. International Harvester Co., 610 F. Supp. 255 (S.D.N.Y. 1985)............................15, 16

Deiter v. Microsoft Corp., 436 F.3d 461 (4th Cir. 2006)..............................................................23

E. Tex. Motor Freight v. Rodriguez, 431 U.S. 395 (1977)............................................................23

Fischer v. Phila. Electric Co., 994 F.2d 130 (3d Cir. 1996) .........................................................17

Fisher v. JP Morgan Chase & Co., 230 F.R.D. 370 (S.D.N.Y. 2005) ...........................................19

Fulani v. Hogsett, 917 F.2d 1028 (7th Cir. 1990)........................................................................22

In re General Motors Corp. Engine Interchange Litigation, 594 F.2d 1106 (7th Cir. 1979).........23

In re General Motors Corp. Dex-Cool Prods. Liab. Litig., MDL-03-1562-GPM
    (S.D. Ill. Feb. 16, 2007) ...........................................................................................................13

General Telegraph Co. of Sw. v. Falcon, 457 U.S. 147 (U.S. 1982).................9, 10, 12, 13, 21, 23

Greenspan v. Brassler, 78 F.R.D. 130 (S.D.N.Y. 1978)................................................................15

Harriston v. Chi. Tribune Co., 992 F.2d 697 (7th Cir. 1993) .........................................................8

In re Household International Tax Reduction Plan, 441 F.3d 500 (7th Cir. 2006) ........................8

Hudson v. Delta Air Lines, Inc., 90 F.3d 451 (11th Cir. 1996) ....................................................19

In Re Initial Public Offering Sec. Litigation, 471 F.3d 24 (2d Cir. 2006)..............................10, 13

Krim v. pcOrder.com, Inc., 210 F.R.D. 581 (W.D. Tex. 2002)....................................................15

Kuper v. Iovenko, 66 F.3d 1447 (6th Cir. 1995) ..........................................................................21

Langbecker v. Electric Data System Corp., No. 04-41760, 2007 WL 117465 (5th Cir.
   Jan. 18, 2007).........................................................................................................................19, 21

Levine v. Berg, 79 F.R.D. 95 (S.D.N.Y. 1978) ............................................................................20

Massengill v. Board of Education, 88 F.R.D. 181 (N.D. Ill. 1980)...............................................14

Miller v. University of Cincinnati, No. 1:05-cv-764, 2006 WL 3591958 (S.D. Ohio
   Dec. 11, 2006)...............................................................................................................................23

Minority Police Officers Association of S. Bend v. City of S. Bend, 555 F. Supp. 921
   (N.D. Ind. 1983).............................................................................................................................24

Ogden v. Americredit Corp., 225 F.R.D. 529 (N.D. Tex. 2005) ..................................................15

Oshana v. Coca-Cola, 225 F.R.D. 575 (N.D. Ill. 2005)..........................................................20, 25

Page v. Pension Ben. Guaranty Corp., 130 F.R.D. 510 (D.D.C. 1990).........................................24

Payne v. Travenol Laboratories, 673 F.2d 798 (5th Cir. 1982) ....................................................24

Peachin v. Aetna Life Ins. Co., No. 92 C 2739, 1996 WL 22968 (N.D. Ill. Jan. 19, 1996).........18

Radford v. General Dynamics Corp., 151 F.3d 396 (5th Cir. 1998) .............................................24

Rand v. Monsanto, 926 F.2d 596 (7th Cir. 1991) .........................................................................13

Ranke v. Sanofi-Synthelabo, Inc., 436 F.3d 197 (3d Cir. 2006) ..................................................24

Reeb v. Ohio Dept. of Rehabilitation & Correctional, 435 F.3d 639 (6th Cir. 2006) ..................16

Retired Chi. Police Ass'n v. City of Chi., 7 F.3d 584 (7th Cir. 1993) ......................................9, 10

Robinson v. Gillespie, 219 F.R.D. 179 (D. Kan. 2003)................................................................14

Sargent v. Genesco, Inc., 75 F.R.D. 79 (D.C. Fla 1977) ................................................14

Schmidt v. Interstate Federal Savings & Loan Ass'n, 74 F.R.D. 423 (D.D.C. 1977) .................24

Silverman v. Mutual Benefit Life Ins. Co., 138 F.3d 98 (2d Cir. 1998)...........................17

Simer v. Rios, 661 F.2d 655 (7th Cir. 1981) ...................................................10, 16, 23

Smith v. Sprint Commc'ns Co., L.P., 387 F.3d 612 (7th Cir. 2004).................................23

In re Storage Tech. Corp. Sec. Litigation, 113 F.R.D. 113 (D. Colo. 1986) ................................14

Strong v. Ark. Blue Cross & Blue Shield, 87 F.R.D. 496 (E.D. Ark. 1980) ................................24

Sunbird Air Services, Inc. v. Beech Aircraft Corp., Civ. A. No. 89-2181-V, 1992 WL
    193661 (D. Kan. July 15, 1992)........................................................................16

Szabo v. Bridgeport Machines, Inc., 249 F.3d 672 (7th Cir. 2001)........................................10, 12

Thomas v. Arias, 219 F.R.D. 338 (M.D. Pa. 2003) ..........................................................18, 19, 20

Trotter v. Klincar, 748 F.2d 1177 (7th Cir. 1984) ..........................................................9

Unger v. Amedisys, Inc., 401 F.3d 316 (5th Cir. 2005) .................................................13

In re Unisys Corp. Retiree Medical Benefits Litigation, 2003 WL 252106
    (E.D. Pa. Feb. 4, 2003)...............................................................................17, 18, 19

Wachtel v. Guardian Life Insurance Co., 453 F.3d 180 (3d Cir. 2006) .................................11, 17

Weiss v. Tenney Corp., 47 F.R.D. 283 (S.D.N.Y. 1969) .................................................13

White v. Sundstrand Corp., No. 98-C-50070, 1999 WL 787455 (N.D. Ill. Sept. 30, 1999) .........23

## STATUTES/RULES

29 U.S.C. §§ 1021-31 ........................................................................................17

29 U.S.C. § 1104..............................................................................................19

29 U.S.C. § 1113..............................................................................................24

29 U.S.C. § 1132..............................................................................................23

29 C.F.R. § 2550.404c-1 ....................................................................................20

Fed. R. Civ. P. 23 ...................................................................................8, 9, 11, 13, 16, 17

## **<u>OTHER</u>**

7A Charles Alan Wright, et al., <u>Federal Practice and Procedure</u>, § 1766 (Updated 2006) ...........14

## <u>INTRODUCTION</u>

Plaintiffs' motion for class certification amounts to little more than a request that the Court certify a class for a carte blanche, extended fishing expedition regarding whether General Dynamics somehow breached its fiduciary duties under ERISA based on no more than bare assertions. Plaintiffs complain about the state of the 401(k) industry, mimicking reports in the press, but not specific to General Dynamics or its 401(k) plans. Despite discovery requests and repeated inquiries from General Dynamics, plaintiffs have not explained the nature of their purported class claims against General Dynamics. At their depositions, not only were plaintiffs unable to state the factual bases for their claims, but they contradicted many of the core allegations in their complaint. They alleged in their complaint that General Dynamics charged (unspecified) excessive and unreasonable fees, but admitted in their depositions that they did not know whether any of the fees charged were improper, or whether General Dynamics did anything wrong in the handling of its 401(k) plans. Plaintiffs further admitted they (and their lawyers) want to use this lawsuit to "investigate" and "collect facts" and "study" whether General Dynamics may have done anything wrong.  Unveiled, plaintiffs simply seek to audit General Dynamics' plans through the civil discovery process to see if they can find a legitimate complaint. Plaintiffs expect the Court and General Dynamics to wait until their discovery audit is complete and their expert's report is filed before they will specify in any meaningful way what class claims, if any, are at issue. The Court should not permit such tactics.

Based on the current, vague assertions of possible wrongs contained in the Complaint, it is impossible for this Court to conduct the inquiries required under Rule 23 to protect, among other things, the interests of the absent class members. Moreover, the named plaintiffs are also

inadequate to that task, because they are uninformed about the case.  As set forth more fully

below, the Court should deny plaintiffs' motion for class certification.

**FACTUAL BACKGROUND**

**Plaintiffs' Complaint**

This lawsuit is one of thirteen largely identical lawsuits filed by plaintiffs' counsel,

Schlichter, Bogard & Denton, against corporate defendants for breach of fiduciary duties under

ERISA in connection with the corporations' defined contribution retirement plans ("401(k)

plans").  [Ex. A at ¶¶ 3-4.][1]  In all of the complaints, plaintiffs bemoan excessive and

unreasonable fees, so-called "revenue-sharing" arrangements, company stock funds, undisclosed

information, hidden fees, improper administration and myriad other supposed problems in the

401(k) industry.  [See Compl. ¶¶ 8-9, 25, 62-81, 86-97.]  However, plaintiffs have little, if any,

factual basis for these generic and sweeping allegations -- at least, as they pertain to General

Dynamics.[2]

Searching through the 140-plus paragraph complaint, General Dynamics only can

identify the following specific issues which are alleged at a general level:

(1) *Allegedly excessive fees*:  Plaintiffs allege General Dynamics charged excessive or

unreasonable fees in connection with its 401(k) plans generally.  [Id. at ¶¶ 11, 25, 128, 139.]

They mention two administrative service providers, Hewitt and CitiStreet, but do not explain,

much less detail, how the fees paid to either are unreasonable or excessive.  [Id. at ¶¶ 60-61.]

---

[1]  "Ex. __" refers to the corresponding exhibit in the Appendix to General Dynamics
Corporation's Response In Opposition to Plaintiffs' Motion For Class Certification filed
concurrently with this brief.

[2]  See also Exhibit A at ¶ 5 (noting that certain defendants in the other cases have moved to
dismiss or for a more particular statement based on the lack of specificity in the complaint).

2

(2) *GD Stock Fund*:  Plaintiffs allege generally that many employers include company stock funds as an investment option in their 401(k) plans, opine on the purported risks of investing in such funds and offer their views on how such funds should be structured.  [Id. at ¶¶ 82, 86-97.]  Plaintiffs then allege General Dynamics structured the GD Stock Fund -- one of the investment options in the General Dynamics plans -- such that plaintiffs owned only units in the stock fund and not direct shares of GD stock, and that the fund held too much cash in the fund, thereby reducing the investment returns of plan participants.  [Id. at ¶¶ 98-104, 110.]

(3) *Revenue-sharing*:  Plaintiffs allege generally that "revenue-sharing" is prevalent within the investment industry, and opine about how revenue-sharing arrangements typically are structured.  [Id. at ¶¶ 58, 62-80.]  Without identifying the revenue being "shared" or the parties involved in the alleged "sharing," plaintiffs simply conclude that General Dynamics too engaged in improper revenue-sharing.  [Id. at ¶ 81.]  Plaintiffs offer no details to support this allegation.

(4) *Failure to disclose*:  Plaintiffs allege General Dynamics failed to disclose to participants in its 401(k) plans certain information regarding the fees and expenses charged to the plans.  [Id. at ¶¶ 25, 79-81, 111-12, 114-23, 128.]  Plaintiffs do not allege:  any intent to deceive by General Dynamics; that the undisclosed information was material; that the alleged non-disclosures caused any losses to the Plan; or that any participant altered his or her investments as a result of any disclosure or non-disclosure.

**Class Discovery**

During class discovery, General Dynamics served interrogatories asking plaintiffs to provide some specificity regarding their allegations as to excessive fees, the GD Stock Fund, revenue-sharing, and General Dynamics' failure to disclose.  [Ex. B. at Nos. 37-47, 52.]  General Dynamics also submitted interrogatories seeking basic information as to the nature of the

damages plaintiffs are seeking in this action.  [Id. at Nos. 50, 53.]  Plaintiffs' answers were non-responsive.  [Ex. C.]  Plaintiffs did not explain the factual basis of any of the allegations or provide any detail about the allegations to permit General Dynamics to understand what they are really complaining about with regard to General Dynamics' 401(k) plans.  [Id.]

General Dynamics also deposed three of the four named plaintiffs.  (Barnes did not sit for a deposition.)  At their depositions, plaintiffs testified that they were unaware of any facts supporting their core complaint allegations.  [Ex. D at 90-100; Ex. E at 42-45, 67-70; Ex. F at 89-96, 128.]  Plaintiffs were also unable to provide any specificity as to the nature of General Dynamics' alleged misconduct.  [Id.]

As to their excessive fees allegations, plaintiffs admitted that they did not know whether any of General Dynamics' 401(k) plans charged excessive or unreasonable fees.  [Ex. D. at 63 ("I don't know for sure … if it's right or not"), 84, 87-88; Ex. E at 42-43 ("I do not know if they are unreasonable or excessive, but I don't know that they are not either."), 84; Ex. F at 69-70, 97-98 ("[I personally] don't know one way or the other whether or not the fees are reasonable or unreasonable[.]").]  Plaintiffs further admitted they could not identify a single investment fund or service provider that they were alleging had charged or been paid excessive fees.  [Ex. D at 91-100; Ex. E at 69-70; Ex. F at 95-96.]

As to the GD Stock Fund, plaintiffs testified about their different understandings of the GD Stock Fund.  In particular, plaintiffs offered conflicting testimony regarding their understanding as to whether fund investors directly owned shares of GD Stock (versus units in the GD Stock Fund), and whether the fund included a small percentage of cash.  [Compare Ex. D at 73-74; with Ex. E at 80-83; with Ex. F at 105-07, 110.]

As to revenue-sharing, contrary to the allegations in their complaint, plaintiffs admitted that they did not know whether General Dynamics engaged in any improper revenue-sharing. [Ex. D at 35-38, 99-100; Ex. E at 67-69; Ex. F at 90-93, 128.]  Plaintiffs further admitted that they did not know what revenue-sharing is, nor could they define or explain what General Dynamics was alleged to have done wrong with respect to revenue-sharing.  [Ex. D at 35, 37-38; Ex. E at 34, 90-91; Ex. F at 90-93.]

Finally, as to the failure-to-disclose claims, all three plaintiffs offered different testimony regarding what information they received, what additional information they wanted, and what (if anything) they would have done differently in making their investment decisions had they been given that information.  [Compare Ex. D at 50-51, 59, 70, 76-77, 84-85, 108-09, 115-16; with Ex. E at 50-59, 70-74, 76; with Ex. F at 48-49, 54-56, 59-63, 70-71, 75-76, 103-04, 119-20.] Plaintiffs also offered unique, individualized testimony as to:  their personal investment strategies; the mix of information they considered in making their investment decisions; the extent they consulted personal financial advisors or others to assist in deciding how to invest their 401(k) funds; and the extent, if any, they considered or relied upon information regarding the fees charged by the various investment options.  [Id.]

**General Dynamics' 401(k) Plans**

When plaintiffs filed their complaint on September 11, 2006, General Dynamics offered among other benefit plans:  the General Dynamics Corporation Savings and Stock Investment Plan ("the SSIP") [3] and the General Dynamics Corporation Hourly Employees' Savings and Stock Investment Plan ("the Hourly Plan").  [Ex. G at ¶ 2.]  Barnes, Cotterman and Kuczon were

---

[3]   What plaintiffs call the "Salaried Plan" in their complaint.

long-time participants in the SSIP.  [Id. at ¶ 3.]  Will was a participant in the Hourly Plan since January 2005.  [Id. at ¶ 4; Ex. H at ¶ 4.]

The SSIP and the Hourly Plan offered various investment options, which changed over time.  [Ex. G at ¶¶ 7-8.]  At the time the complaint was filed, the SSIP and the Hourly Plan offered the following eight investment options:  Balanced Fund, Fixed Income Fund, Bond Index Fund, Small Cap Fund, GD Stock Fund, S&P 500 Fund, Large Cap Value Fund, and Large Cap Growth Fund.  [Id. at ¶ 7.]  Each fund has different fund expenses.  [See Ex. I.]

Effective January 1, 2007, for reasons unrelated to this litigation, General Dynamics reorganized the SSIP into three separate plans to accommodate new design features applicable to the different General Dynamics business units.  [Ex. G at ¶ 5.]  Two new plans were spun off from the SSIP, the General Dynamics Corporation Savings and Stock Investment Plan (Plan 4.5) (hereinafter "the SSIP 4.5") and the General Dynamics Corporation Savings and Stock Investment Plan (Plan 5.0) (hereinafter "the SSIP 5.0"), and the SSIP was renamed the General Dynamics Corporation Savings and Stock Investment Plan (Plan 3.0) (hereinafter "the SSIP 3.0").  [Id.]  Also, the Hourly Plan was re-named the General Dynamics Corporation Savings and Stock Investment Plan for Represented Employees ("the Represented Employees Plan").  [Id.]  Cotterman is a member of the SSIP 4.5; Kuczon and Barnes are now members of the SSIP 3.0; and no plaintiff is a member of the SSIP 5.0.  [Id. at ¶ 6.]  Will is now a member of the Represented Employees Plan.  [Id. at ¶ 6.]  Each of these plans currently offer the same eight fund options as were offered by the SSIP and the Hourly Plan.  [Id. at ¶ 9.]

As 401(k) plan participants, plaintiffs choose and control which funds they invest their 401(k) plan monies in.  [See Ex. J at 6.]  As of the date the complaint was filed, each plaintiff had selected an entirely different portfolio of investment funds for his respective 401(k) plan

6

accounts.  [Ex. H at ¶ 6.]  Barnes invested in the Fixed Income Fund; Cotterman invested in the

Balanced Fund, Fixed Income Fund, GD Stock Fund, S&P 500 Fund, and Small Cap Index

Fund; Kuczon invested in the Fixed Income Fund, GD Stock Fund and S&P 500 Fund; and Will

invested in Balanced Fund, Bond Fund, Fixed Income Fund, GD Stock Fund, S&P 500 Fund,

and Small Cap Index Fund.  [Id.]  Presently, no plaintiff is invested in the Bond Fund, Large Cap

Growth Fund or the Large Cap Value Fund.  [Id. at ¶ 8.]

      General Dynamics -- unlike some employers -- also provides a generous company match

program, whereby it matches certain employee contributions to their 401(k) plan accounts.

[Ex. G at ¶ 10.]  Each of the plaintiffs' 401(k) plan accounts includes matching contributions

made by General Dynamics.  [Ex. H at ¶ 12.]  At least one plaintiff admitted he was generally

satisfied with the returns on his General Dynamics 401(k) plan.  [Ex. E at 64; see also Ex. D at

102 ("no complaints at all" with performance of GD Stock Fund).]

### Plaintiffs' Motion For Class Certification

      Against the backdrop of the structure of General Dynamics' 401(k) plans, the numerous

investment options offered, plaintiffs' own unique investment decisions, and their vague

allegations and explanations, plaintiffs have moved to certify a broad class consisting of:  "All

persons, excluding the Defendants, and/or other individuals who are or may be liable for the

conduct described in this Complaint, who are or were participants or beneficiaries of the Salaried

Plan or the Hourly Plan and who are, were or may have been affected by the conduct set forth in

the Complaint, as well as those who may become future participants of beneficiaries of either

Plan in the future."  [Pl. Mot. for Class Cert. at 1-2.]  Plaintiffs seek certification under

Rule 23(b)(1) or, in the alternative, under Rule 23(b)(2) and (b)(3).  [Id. at 3.]

## **ARGUMENT**

To maintain a class action, plaintiffs must establish that the following requirements of Rule 23(a) are satisfied:  numerosity, commonality, typicality, and the adequacy of the representative parties.  See Harriston v. Chi. Tribune Co., 992 F.2d 697, 703 (7th Cir. 1993).  If these four prerequisites are established, the potential class must also satisfy at least one provision of Rule 23(b).  See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997).

The Seventh Circuit and this Court have recognized that class treatment is often appropriate for ERISA breach of fiduciary duty claims, especially where the case involves a plan-wide issue, and that such claims are frequently certified.  See, e.g., In re Household Int'l Tax Reduction Plan, 441 F.3d 500 (7th Cir. 2006) (involving partial plan termination which resulted in class members forfeiting matching contributions); Berger v. Xerox Corp. Ret. Income Guarantee Plan, 338 F.3d 755 (7th Cir. 2003) (involving plan-wide formula for determining lump sum distributions to participants which allegedly violated ERISA valuation and forfeiture rules); Call v. Ameritech Mgmt. Pension Plan, 3:01-cv-00717-GPM-CJP at 3-5 (Dkt. #81) (S.D. Ill. Aug. 26, 2003) (involving plan-wide formula and assumptions to determine lump sum contributions) [Ex. M]; Cooper v. IBM Personal Pension Plan, 3:99-cv-00829-GPM-PMF (Dkt. #70) (S.D. Ill. Sept. 17, 2001) (involving plan-wide cash balance formula) [Ex. N]; see also Fed. R. Civ. P. 23(b)(1)(B), Adv. Comm. Notes (1966 amend.) (noting that an action charging a breach of trust affecting members of a large class often appropriate for class certification).[4]

---

[4]   General Dynamics is also aware of the ERISA "stock drop" cases, many of which are cited by plaintiffs, where classes have been certified consisting of those plan participants who invested in their company stock fund.  [See Pl. Mem. In Support of Mot. for Class Cert. at 10-12, 15, 17.] But these are inapposite because plaintiffs are not requesting certification of a class consisting of just the persons who invested in the GD Stock Fund.

Here, however, there is no provision of the General Dynamics' plans or any plan-wide formula at issue.  Nor have plaintiffs indicated that their complaint relates to any particular fund or any plan-wide fee.  Rather, plaintiffs' claims -- at least as currently articulated -- mostly consist of generic, vague allegations about excessive fees and revenue-sharing within the 401(k) industry.  Without more, and without specificity, the Court (and General Dynamics) is left guessing as to what specific issues plaintiffs seek to litigate on a class-wide basis.

Because ultimately this motion is a request to certify a generic ERISA breach of fiduciary duty class, the Court should deny plaintiffs' motion.  First, without clarity from plaintiffs, the Court cannot assess whether any ERISA fiduciary duty claims in this case are appropriate for class certification.  Second, the named plaintiffs are inadequate class representatives because they lack knowledge regarding the nature of their claims. Third, plaintiffs' failure-to-disclose claims raise individual issues of knowledge, reliance, materiality and causation which are inappropriate for class treatment, and plaintiffs' claims for investment losses resulting from their individual investment decisions raise ERISA Section 404(c) defenses which are inappropriate for class treatment.  Finally, if the Court certifies some portion of plaintiffs' claims, the Court should narrow the class definition.

## I.    PLAINTIFFS' REQUEST TO CERTIFY A GENERIC ERISA BREACH OF FIDUCIARY DUTY CLASS SHOULD BE DENIED.

Under Rule 23 of the Federal Rules of Civil Procedure, the Court should conduct a "rigorous analysis" to determine whether this case may be certified as a class action.  Fed. R. Civ. P. 23; Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (U.S. 1982).  To enable the Court to conduct its requisite analysis, plaintiffs bear the burden of establishing that each of the requirements under Rule 23(a) and (b) have been satisfied.  See Amchem Prods., 521 U.S. at 614; Retired Chi. Police Ass'n v. City of Chi., 7 F.3d 584, 596 (7th Cir. 1993); Trotter v.

Klincar, 748 F.2d 1177, 1184 (7th Cir. 1984).  Actual, not presumed, conformance with the

various Rule 23 requirements is "indispensable."   Szabo v. Bridgeport Machs., Inc., 249 F.3d

672, 677 (7th Cir. 2001) (*citing* Gen. Tel., 457 U.S. at 160); see also In Re Initial Public Offering

Sec. Litig., 471 F.3d 24, 33 (2d Cir. 2006).  Plaintiffs' failure to satisfy even one of the

requirements precludes certification altogether.  See Retired Chi. Police, 7 F.3d at 596; Clay v.

Am. Tobacco Co., 188 F.R.D. 483, 489 (S.D. Ill. 1999).

 In conducting its rigorous analysis, the Court should not accept all of the complaint's

allegations as true.  See Szabo, 249 F.3d at 675-76.  Rather, it should "pierce the allegations of

the complaint" to make the factual and legal inquiries necessary to determine if all the Rule 23

factors have been satisfied, because resolving such disputes strongly influences the wisdom of

class certification.  Id. at 676-678; see also Local R. 23.1(a) ("Discovery prior to class

certification must be sufficient to permit the court to determine whether the requirements of

[Rule 23] are satisfied, including a preliminary inquiry into the merits of the case to ensure

appropriate management of the case as a class action.").  For example, in assessing whether

plaintiffs have met their burden of proof, the Court should take into account the substantive

elements of plaintiffs' claims and consider the proof that will be necessary at trial to establish

each element.  See Simer v. Rios, 661 F.2d 655, 672 (7th Cir. 1981); Clay, 188 F.R.D. at 489.

 Given the nature of this rigorous analysis, the Supreme Court has emphasized the "need

for more precise pleadings."  Gen. Tel., 457 U.S. at 160.  As the Supreme Court explained:

"[W]ithout reasonable specificity, the court cannot define the class, cannot determine whether

the representation is adequate, and [the defendant] does not know how to defend."  Id. at 161.

This specificity requirement relates, in part, to the Court's obligation under Rule 23(c)(1)(B) to

define as part of any order certifying a class the precise class claims, issues and/or defenses at

issue.  Fed. R. Civ. P. 23(c)(1)(B).  Strict observation of Rule 23's specificity requirement is critical because it provides the necessary definition as to "the full and clear articulation of the litigation's contours."  Wachtel v. Guardian Life Ins. Co., 453 F.3d 180, 186-187 (3d Cir. 2006).

In this case, plaintiffs have failed -- via the complaint, their class certification motion, and their refusal to provide information during class discovery -- to provide the Court the necessary specificity regarding the claims which they seek to pursue on a class-wide basis.  Plaintiffs' allegations and explanations continue to be vague, non-specific, and conclusory.

This lack of specificity is illustrated by a review of Paragraph 25 of the complaint, wherein plaintiffs attempt to establish that they have satisfied the Rule 23(a) criteria.  In Paragraph 25(B), plaintiffs purport to identify numerous common issues relating to their excessive fees claims.  [Compl. ¶ 25(B)(i)-(v), (ix)-(x), (xiii).]  Then, in Paragraph 25(C), plaintiffs make a sweeping, conclusory allegation that the claims of the named plaintiffs are typical of those of the absent class members because:  "The Defendants' breach of those obligations constitutes a breach to each Plan participant, beneficiary, and member of the Class."  [Id. at ¶ 25(C)(ii).]  Finally, plaintiffs conclude:  "Plaintiffs do not have any interests antagonistic to the other class members nor do they have any unique claims or defenses that might undermine the efficient resolution of the Class' claims."  [Id. at ¶ 25(D).]

But, plaintiffs do not identify which specific fees or expenses are alleged to be at issue.[5] And, plaintiffs refused to provide this information during class discovery.  Rather, at their depositions, plaintiffs admitted they were "still studying," "still collecting facts," and

---

[5]  Plaintiffs did identify payments made to two service providers in 2004:  Hewitt and CitiStreet.  [Compl. ¶ 60-61.]  If those two payments are the only fees at issue, then plaintiffs should clarify and say so.  Similarly, if the GD Stock Fund is the only investment fund at issue, plaintiffs should say so and narrow their proposed class definition accordingly.

"investigating" which fees, if any, they were challenging in this case.   [Ex. D at 63-64, 87; Ex. E at 70.]

Without this critical information, the Court cannot determine, among other criteria: whether plaintiffs' claims are common with and typical of those of the absent class members; whether individual issues will predominate; or whether in proving up their individual claims (as to the plans and funds in which they each invested) plaintiffs will also prove up the claims of the absent class members.  For example, if plaintiffs are challenging fees charged by funds in which they did not invest, then they are not appropriate class representatives as to those claims.  And, if plaintiffs are challenging fees charged by funds in plans in which they did not participate, then they are not representative of absent class members who are members of those plans.  Similarly, plaintiffs cannot contest any revenue-sharing by funds in which they did not participate.

In addition, General Dynamics would be severely prejudiced if it were forced to defend against a class action involving such vague and amorphous allegations.  Because plaintiffs refuse to identify which fees are at issue, General Dynamics would have to prepare defenses as to every fee paid to every service provider and every fee charged by every fund in its 401(k) plans.  And, without knowing what it is alleged to have done wrong, General Dynamics would have to retain expert witnesses, at significant cost, to rebut the multitude of potential claims and issues that may be lurking in plaintiffs' complaint.  In the face of such prejudice, a class should not be certified.  See Gen. Tel., 457 U.S. at 161 ("without reasonable specificity [in the form of more precise pleadings] the employer does not know how to defend"); Szabo, 249 F.3d at 677 (defendants entitled to "independent judicial review of the plaintiff's allegations" because "[c]ertifying classes on the basis of incontestable allegations in the complaint moves the court's discretion to the plaintiff's attorneys who may use it in ways injurious to [defendants]").

Accordingly, because plaintiffs' putative class-wide claims are insufficiently defined, the Court should deny plaintiffs' motion at this time and require them to clarify the precise nature of their claims against General Dynamics.[6]  See Gen. Tel., 457 U.S. at 160-61 (reversing and remanding class certification issue and emphasizing need for "more precise pleadings"); Initial Public Offering, 471 F.3d at 42 (holding that district court did not satisfy Rule 23 analysis requirements); Unger v. Amedisys, Inc., 401 F.3d 316, 319 (5th Cir. 2005) (reversing and remanding class certification issue because district court applied "too lax a standard of proof"); Weiss v. Tenney Corp., 47 F.R.D. 283, 287 (S.D.N.Y. 1969) (class certification motion premature "[u]ntil the complaint expressly sets forth all of the various causes of action that will be subject to trial").

## II.    THE NAMED PLAINTIFFS ARE INADEQUATE TO SERVE AS CLASS REPRESENTATIVES.

Rule 23 provides that a class representative should adequately protect the interests of the class.  Fed. R. Civ. P. 23.  In analyzing whether a proposed plaintiff would be an adequate class representative, the Court considers, among other factors, his commitment to the litigation.  Rand v. Monsanto, 926 F.2d 596, 599 (7th Cir. 1991) ("Rule 23 contemplates, and the district court should insist on, a conscientious representative plaintiff . . . Judges are on the lookout for persons who may pay inadequate attention to the interests of the others they purport to represent.").  Among other criteria, the Court assesses whether he pays sufficient attention to the litigation to

---

[6]   The class should also not be certified as proposed because it would be unmanageably large and complex, like the proposed class in In re General Motors Corp. Dex-Cool Prods. Liab. Litig., No.03-cv-01562, 2007 WL 522300 (S.D. Ill. Feb. 16, 2007) [Ex. V].  In that case, the proposed class included current and former owners and lessees of thirty-one different GMC models with four different engine types over ten model years, and this Court concluded that class certification was "defeated by the extremely large number of models of GMC vehicles involved in the proposed class."  Id. at *18.  The Court held that, particularly because of the need for extensive expert testimony on technical issues, it was "inconceivable that the Court could resolve the matters as to which class certification is sought without any inquiry into the specific design[] of each . . . model[] of GMC vehicle[] in the proposed class."  Id. at *21.

possess adequate knowledge regarding the nature and bases of his claims.  Id.  This inquiry is

critical, among other reasons, to ensure that a plaintiff is not simply lending his name to a suit

controlled entirely by class counsel.  See 7A Charles Alan Wright, et al., Federal Practice and

Procedure, § 1766 (Updated 2006); Robinson v. Gillespie, 219 F.R.D. 179, 186 (D. Kan. 2003).

Here, plaintiff Barnes is not an adequate class representative.  Barnes refused to appear

for his properly scheduled deposition and, instead, announced that he no longer was interested in

serving as a named plaintiff or class representative.  [See Exs. K-L.]  Plaintiffs' counsel has

proposed voluntarily dismissing Barnes from the case without prejudice and without General

Dynamics being awarded its costs.  [Id.]  Regardless of whether he is dismissed, however,

Barnes should not be appointed as a class representative because he did not appear for his

deposition.  See In re Storage Tech. Corp. Sec. Litig., 113 F.R.D. 113, 118 (D. Colo. 1986);

Sargent v. Genesco, Inc., 75 F.R.D. 79, 83 (D.C. Fla 1977).

Similarly, Cotterman, Kuczon and Will are not adequate class representatives because

they have not demonstrated a willingness to serve as conscientious representatives of the

interests of the absent class members.  For example:

•       No Knowledge Regarding Facts Underlying Core Complaint Allegations:  At

their depositions, the named plaintiffs were each asked to identify the facts underlying the core

complaint allegations.  None, however, was able to identify even a single fact to support those

allegations.  [Ex. D at 90-102; Ex. E at 42-45, 67-71; Ex. F at 89-96, 128.]  See Massengill v.

Bd. of Educ., 88 F.R.D. 181, 186 (N.D. Ill. 1980) ("A representative, held to a standard of

minimal awareness about the class, should at least be knowledgeable of the essential issues of the

case."); Berger v. Compaq Computer Corp., 257 F.3d 475, 483 n.18 (5th Cir. 2001) ("It is not

enough that plaintiff's counsel are competent if the plaintiffs themselves almost totally lack

14

familiarity with the facts of the case."); Ogden v. Americredit Corp., 225 F.R.D. 529, 535 (N.D.

Tex. 2005) (plaintiff inadequate who did not know the facts supporting allegations in complaint);

Krim v. pcOrder.com, Inc., 210 F.R.D. 581, 588 (W.D. Tex. 2002) (same); Darvin v. Int'l

Harvester Co., 610 F. Supp. 255, 257 (S.D.N.Y. 1985) (same).

•   *Plaintiffs' Knowledge Comes Only from Attorneys:*  Plaintiffs have little or no

knowledge regarding the bases or nature of their core complaint allegations.  [Ex. D at 90-102;

Ex. E at 67-71; Ex. F at 89-96.]  Rather, they appear to be relying almost entirely on their

counsel to educate them, and seem satisfied that their counsel understands the complaint.  [See,

e.g., Ex. D at 35-38, 62-63, 90-100; Ex. E at 42-45, 67-70, 90-91; Ex. F at 89-96, 100-03.]  See

Krim, 210 F.R.D. at 588 (rejecting named plaintiff with "no understanding of the role he is

playing in [the lawsuit] other than what his lawyers told him"); Ogden, 225 F.R.D. at 535

("While [deriving knowledge from counsel] is acceptable to some degree, the extent to which it

is present in this case renders [proposed representative's] adequacy arguments unpersuasive.").

•   *Plaintiffs Merely Responded to Advertisements*:  Plaintiffs' lack of knowledge

regarding the allegations and claims raised in their complaint is not surprising given that

plaintiffs were solicited via newspaper advertisements to serve as named plaintiffs.  [Ex. D at 22-

24; Ex. E at 25-28; Ex. F at 30-39.]  See Ogden, 225 F.R.D. at 535.

•   *No Knowledge Regarding Why John Schwartz Named As Defendant or Whether*

*He Remains A Defendant*:  In their complaint, plaintiffs sued both General Dynamics and John

Schwartz.  Mr. Schwartz, subsequently, was dismissed from the case (before the depositions).

[Dkt. No. 19.]  At their depositions, plaintiffs admitted they did not know Mr. Schwartz, why he

was sued, or whether he remained in the case.  [Ex. E at 44-45; Ex. D at 90; Ex. F at 77-78.]  See

Ogden, 225 F.R.D. at 535; Greenspan v. Brassler, 78 F.R.D. 130, 133 (S.D.N.Y. 1978).

- _No Knowledge Regarding Damages Seeking In Case_:  Plaintiffs lack knowledge as to the nature of the remedy and damages they are seeking.  [Ex. C at Nos. 50, 53; Ex. E at 70-74; Ex. F at 119-20; Ex. D at 107.]  See Sunbird Air Servs., Inc. v. Beech Aircraft Corp., Civ. A. No. 89-2181-V, 1992 WL 193661, at *4 (D. Kan. July 15, 1992) (questioning whether plaintiff could protect the interests of the class due to its lack of knowledge concerning the type and extent of damages it suffered) [Ex. O].

- _Plaintiffs' Failure To Review Their Responses To General Dynamics' Interrogatories Until Weeks After They Were Served and Lack of Knowledge Regarding Content of Responses_:  Plaintiffs did not read or review their purported answers to General Dynamics' first set of interrogatories until a few weeks _after_ their responses were served on General Dynamics.  [Ex. C; Ex. E at 51-52; Ex. F at 80.]  And, when asked to provide basic information as to the meaning of certain responses, plaintiffs were unable to answer.  [Ex. F at 99-103; see also Ex. E at 75.]  See Darvin, 610 F. Supp. at 257.

Accordingly, because plaintiffs have not demonstrated a willingness to be conscientious representatives on behalf of the class, they are not adequate class representatives and should not be permitted to serve as class representatives.

## III.    CLASS CERTIFICATION IS NOT APPROPRIATE FOR CERTAIN CLAIMS AND DEFENSES UNDER ANY CIRCUMSTANCE.

In performing its Rule 23 analysis, the Court should review plaintiffs' claims to determine whether each is appropriate for class certification.  See Clay, 188 F.R.D. at 489 (citing Simer, 661 F.2d at 672) (holding that the court must look at the substantive elements of plaintiffs' claims).  This is particularly important as the Court has the authority to certify a class on some issues and refuse to certify a class on others.  Fed. R. Civ. P. 23(c)(4); Clay, 188 F.R.D. at 489; see also Reeb v. Ohio Dep't of Rehab. & Corr., 435 F.3d 639, 644 (6th Cir. 2006) (court

must look at the precise nature of plaintiffs' claims to assess typicality and commonality).

Moreover, such an analysis is necessary to satisfy the Rule 23(c)(1) requirement that "an order

certifying a class action must define the class, and the class claims, issues, or defenses."  Fed. R.

Civ. P. 23(c)(1)(b); see also Wachtel, 453 F.3d at 185 (noting Rule 23(c)(1)(b) requires a "clear

statement regarding the full scope and parameters of the claims, issues or defenses to be treated

on a class basis as the matter is litigated").  Here, plaintiffs appear to be asserting two claims

which are not appropriate for class treatment:  (i) failure-to-disclose claims, and (ii) claims for

individual investment losses which will implicate the ERISA section 404(c) defense.

### A.     Plaintiffs' Failure-To-Disclose Claims Are Not Appropriate For Class Certification.

In their complaint, plaintiffs assert numerous claims premised on General Dynamics'

alleged failure to inform or disclose certain information to the participants in its 401(k) plans.

[See, e.g., Compl. § 25(B)(vi)-(viii).]  To establish a claim for non-disclosure, plaintiffs must

establish, among other elements, that the undisclosed information would have been material to

the average plan participant (i.e., that it would have affected an actual decision that the

participant made).  See Fischer v. Phila. Elec. Co., 994 F.2d 130, 135 (3d Cir. 1996); see also

Ballone v. Eastman Kodak Co., 109 F.3d 117, 122-23 (2d Cir. 1997).  In addition, plaintiffs must

show that the alleged failure to disclose caused losses to the plans.  See In re Unisys Corp.

Retiree Med. Benefits Litig., No. 969, 2003 WL 252106, at *5 (E.D. Pa. Feb. 4, 2003) [Ex. P];

see also Brock v. Robbins, 830 F.2d 640, 647 (7th Cir. 1987); Silverman v. Mutual Benefit Life

Ins. Co., 138 F.3d 98, 104 (2d Cir. 1998).[7]

---

[7]  To prevail on these claims, plaintiffs will also have to establish that General Dynamics failed to comply with one of ERISA's reporting or disclosure obligations.  See, e.g., 29 U.S.C. §§ 1021-31.  Plaintiffs have not alleged, nor will they be able to prove, that General Dynamics failed to disclose any such information.  Moreover, even if plaintiffs can establish a duty to disclose additional information beyond that required by ERISA, these claims still fail because

17

These inquiries are highly individual, and not appropriate for class treatment. Furthermore, in the context of ERISA claims, unlike securities fraud cases, a plan participant's detrimental reliance upon the representation or omission of a fiduciary may not be presumed. See Thomas v. Arias, 219 F.R.D. 338, 342 (M.D. Pa. 2003); Unisys Corp., 2003 WL 252106, at *5 n. 13; Peachin v. Aetna Life Ins. Co., No. 92 C 2739, 1996 WL 22968, at *5 (N.D. Ill. Jan. 19, 1996) [Ex. Q].

Plaintiffs' deposition testimony illustrates that individualized hearings will be necessary to resolve these issues.  Plaintiffs testified that:  they each had a different investment strategy and objective [compare Ex. E at 51 (no fund transfers over past 13 years) with Ex. F at 53-54 (many transfers and re-distributions over last 2 years)]; they each considered a different mix of information in making their investment decisions [compare Ex. D at 58-59 with Ex. E at 58-64 with Ex. F at 56); they each recalled receiving different information from General Dynamics relating to the various investment options [compare Ex. D at 59 (received Fund Fact sheets identifying fees for each fund) with Ex. F at 48-49 and Ex. E at 50-51 (no recall receiving Fund Fact sheets)]; they took different approaches towards reviewing the electronic data made available by the company [compare Ex. F at 72-73 (reviews GD benefits website every few weeks) with Ex. E at 62-63 (accessed website twice over last several years)]; and they each have different views as to what, if anything, they would do differently if different information had been made available to them.  [Compare Ex. D at 108-09, 116 (would not seek to change investment decisions if learned fees were excessive) with Ex. E at 72 (does not know whether he would seek to change any of his investment decisions if learned fees were excessive).]

---

plaintiffs have not alleged, nor can they prove, any causal connection between their non-disclosure claims and any alleged losses.  See Silverman, 138 F.3d at 104.

The individualized nature of these inquiries, and the inherent tensions and conflicts among the claims of the named plaintiffs, highlights why class certification is not appropriate for failure-to-disclose claims under ERISA.  See Coffin v. Bowater Inc., 228 F.R.D. 397, 408-09 (D. Me. 2005) (breach of fiduciary duty claims premised on lack of adequate disclosure regarding operational aspects of 401(k) plan required individual proof of reliance and should not be certified); Thomas, 219 F.R.D. at 342 ("in the context of an ERISA claim, a plan participant's detrimental reliance upon the representation or omission of a fiduciary may not be presumed"); see also Hudson v. Delta Air Lines, Inc., 90 F.3d 451, 457-58 (11th Cir. 1996) (ERISA claims not appropriate for class treatment where even if plaintiffs could have shown that employer disseminated a uniform message to all putative class members, individual reliance issues would remain); Fisher v. JP Morgan Chase & Co., 230 F.R.D. 370, 379 (S.D.N.Y. 2005) (ERISA breach of fiduciary duty claims not suitable for class certification where individual issues of reliance predominate); Unisys Corp., 2003 WL 252106, at *5 ("Thus, as with other elements of Plaintiffs' breach of fiduciary duty claim, the Court finds that proving detrimental reliance [the final element in a breach of fiduciary duty claim] will involve factual disparities among the retirees and thus presents issues that preclude litigation as a class.").

**B.      ERISA Section 404(c) Precludes Class Certification For Claims Based On Individual Participants' Investment Decisions.**

ERISA provides a limitation on liability for pension plans that comply with ERISA § 404(c).  See 29 U.S.C. § 1104(c)(2).  Under Section 404(c), there is no fiduciary liability when the losses "result from such participant's or beneficiary's exercise of control."  Langbecker v. Elec. Data Sys. Corp., No. 04-41760, 2007 WL 117465, at *6 (5th Cir. Jan. 18, 2007) [Ex. R]. In assessing the applicability of a Section 404(c) defense, the governing Department of Labor regulations provide that "[w]hether a participant or beneficiary has exercised independent control

19

in fact with respect to a transaction depends on the facts and circumstances of the particular case." 29 C.F.R. § 2550.404c-1(c)(2). Given the individualized nature of this inquiry, class treatment is improper where defendants have "even an arguable defense" that plaintiffs may be subject to Section 404(c). See generally Oshana v. Coca-Cola, 225 F.R.D. 575, 583 (N.D. Ill. 2005), aff'd, 472 F.3d 506 (7th Cir. 2007); see Thomas, 219 F.R.D. at 342 (possibility of 404(c) defense renders the potential class members' claims significantly different and atypical of plaintiff's claim).

Here, plaintiffs admitted that they exercised complete, independent control over their 401(k) investment decisions. [Ex. E at 65-66; Ex. F at 57-58; Ex. D at 57-58.] Plus, three of the four plaintiffs are retirees and, thus, have been free to take a total distribution and to re-invest their balances elsewhere. [Ex. C at Nos. 14, 32; Ex. E at 12-13; Ex. J at 13-14.] The retirees were also free to request a distribution of funds invested in the GD Stock Fund in shares of company stock. [Ex. J at 14.] Moreover, at least one plaintiff consulted with a personal financial advisor regarding his 401(k) investments.[8] [Ex. E at 64.] As such, General Dynamics may raise a Section 404(c) defense as to any investment loss claims plaintiffs may be asserting in this case. For example, to the extent plaintiffs are contending that had they received additional information as to the fees charged by the various funds that they would not have invested in those funds in the first instance (and instead selected another fund), then plaintiffs are subject to a Section 404(c) defense. [See Ex. E at 72-74; Ex. F at 119-20.] Similarly, to the extent

---

[8]   Kuczon's use of a financial advisor subjects him to other unique defenses. For example, to the extent plaintiffs contend they were unaware of the fees charged by the investment options or whether there was revenue-sharing, Kuczon had knowledge not only of everything General Dynamics disclosed, but everything known by his advisor. See Levine v. Berg, 79 F.R.D. 95, 97 (S.D.N.Y. 1978) (named plaintiff's possible reliance upon another's expertise raised issues of individual reliance). Also, Kuczon is improperly blocking General Dynamics' ability to pursue this discovery by refusing to identify his advisor. [Ex. E at 60-61.]

plaintiffs are contending that General Dynamics is liable for any investment losses they suffered by investing in any particular investment fund, or seeking the allocation of alleged investment losses to the individual accounts of the thousands of plan participants, then they are susceptible to Section 404(c) defenses and class treatment is not appropriate.  See Langbecker, 2007 WL 117465, at *10-11 (issues raised by Section 404(c) defense may make class certification improper).

Moreover, any such claim for investment losses fails as a matter of law in that plaintiffs failed to plead and cannot establish any causation between the allegedly withheld information and any losses suffered by the plan participants.  Indeed, in one of the virtually identical lawsuits filed by plaintiffs' counsel, the Court recently dismissed plaintiffs' claims for investment losses on this basis.  [Ex. S.]

## IV.     THE PROPOSED CLASS DEFINITION IS OVERBROAD.

Should the Court decide to certify any portion of plaintiffs' claims, the proposed class definition will need to be narrowed substantially as discussed below.

### A.     Any Class Definition Should Be Limited To Those Plans In Which Plaintiffs Participated and the Funds In Which They Invested.

Given plaintiffs' failure to provide any detail regarding the specific nature of their claims, the Court (and General Dynamics) is left to speculate as to which fees, funds and/or service providers may be at issue.  But, assuming plaintiffs seek to challenge all fees relating to the plans, the named plaintiffs are not appropriate class representatives to represent such a broad class because they do not share the same interests nor did they suffer the same injuries as the absent class members (including both the active employees and retirees).  See Gen. Tel., 457 U.S. at 156; cf. Kuper v. Iovenko, 66 F.3d 1447, 1451 (6th Cir. 1995) (certifying class limited to participants who invested in company stock).

As discussed above, at the time this lawsuit was filed:  Barnes, Cotterman and Kuczon were long-time members of the SSIP; and Will had been enrolled in the Hourly Plan since January 2005.  [Ex. G at ¶ 3-4; Ex. H at ¶ 4-5.]  No named plaintiff was a member of the Hourly Plan prior to January 2005.  [Id.]  In January 2007, General Dynamics reorganized the SSIP resulting in the following separate plans:  the SSIP 5.0, the SSIP 4.5, and the SSIP 3.0.  [Ex. G at ¶ 5.]  The Hourly Plan was re-named the Represented Employees Plan.  [Id.]  Cotterman belongs to the SSIP 4.5; Kuczon and Barnes belong to the SSIP 3.0; and Will belongs to the Represented Employees Plan.  [Id. at ¶ 6.]  No named plaintiff is a member of the SSIP 5.0.  [Id.]

Each of General Dynamics' 401(k) plans offered numerous investment options, and the options changed over time.  [Id. at ¶¶ 7-8.]  Plan participants decided the funds in which their 401(k) plan monies were invested.  [Ex. J at 6.]  The named plaintiffs did not invest in all the funds offered by their respective plans.  In particular:

- *SSIP*:  During the period September 11, 2000 (beginning of maximum statute of limitations period) to December 31, 2006, Barnes, Cotterman and Kuczon did not invest in:  Large Cap Value Fund; or Large Cap Growth Fund.  [Ex. H at ¶ 9.]

- *Hourly Plan*:  During the period January 2005 (when Will enrolled) to December 31, 2006, Will did not invest in:  Large Cap Value Fund; or Large Cap Growth Fund.  [Id. at ¶ 10.]

- *SSIP 4.5*:  During the period January 1, 2007 to the present, Cotterman did not invest in:  Bond Index Fund; Large Cap Value Fund; or Large Cap Growth Fund.  [Id. at ¶ 11.]

- *SSIP 3.0*:  During the period January 1, 2007 to the present, Kuczon and Barnes did not invest in:  Balanced Fund; Bond Index Fund; Small Cap Index Fund; Large Cap Value Fund; or Large Cap Growth Fund.  [Id.]

- *Represented Employees Plan*:  During the period January 1, 2007 to the present, Will did not invest in:  Balanced Fund; Bond Index Fund; S&P 500 Fund; Small Cap Index Fund; Large Cap Value Fund; or Large Cap Growth Fund.  [Id.]

The named plaintiffs do not have standing and thus cannot serve as representatives for those who participated in different plans or invested in different funds.  See Fulani v. Hogsett,

22

917 F.2d 1028, 1030 (7th Cir. 1990) (to establish standing, plaintiffs must allege a personal

injury fairly traceable to the defendant's allegedly unlawful conduct that is likely to be redressed

by the requested relief); 29 U.S.C. § 1132(a)(2)-(3).  Similarly, plaintiffs are not adequate

representatives for those who participated in different plans or invested in different funds.  See

Gen. Tel., 457 U.S. at 156 (class representative must possess the same interest and suffer the

same injury as the class members);  E. Tex. Motor Freight v. Rodriguez, 431 U.S. 395, 403

(1977) (named plaintiffs not proper class representatives because they were not members of the

class of absent members they purported to represent); Smith v. Sprint Commc'ns Co., L.P., 387

F.3d 612, 615 (7th Cir. 2004) (vacating class certification because subgroups within the class

were inadequately represented by named plaintiffs); Simer, 661 F.2d at 672 (class certification

inappropriate where the facts the named plaintiffs will rely on to prove their claims will be

different than the elements necessary for the absent class members); Deiter v. Microsoft Corp.,

436 F.3d 461, 467-68 (4th Cir. 2006) (named plaintiffs cannot represent purchasers of product

they did not buy as liability and damages issues would be different).  Accordingly, the Court

should narrow the class definition to only include those plans in which plaintiffs belonged and

the investment funds in which they participated.[9]

   **B.     Any Class Definition Should Be Narrowed To The ERISA Statute of
          Limitations Period.**

      A proper class definition should specify a particular group that was harmed during a

particular time frame, in a particular location, and in a particular way.  See Miller v. Univ. of

Cincinnati, No. 1:05-cv-764, 2006 WL 3591958, at *3 (S.D. Ohio Dec. 11, 2006) [Ex. U].  No

---

[9]  Sub-classes may be appropriate here to the extent different plans and funds are at issue.  See
In re Gen. Motors Corp. Engine Interchange Litig., 594 F.2d 1106, 1129 (7th Cir. 1979); White
v. Sundstrand Corp., No. 98-C-50070, 1999 WL 787455, at *4 (N.D. Ill. Sept. 30, 1999) [Ex. T],
aff'd, 256 F.3d 580 (7th Cir. 2001); Cooper v. IBM Personal Pension Plan, Civil No. 3:99-cv-
GPM-PMF (Dkt. No. 70) (S.D. Ill. Sept. 17, 2001).

class action should proceed on behalf of class members whose claims are barred by the applicable statute of limitations.  Schmidt v. Interstate Fed. Savs. & Loan Ass'n, 74 F.R.D. 423, 428 (D.D.C. 1977).  Any other result would allow plaintiffs to revive stale claims that could not be brought on an individual basis.  Id.; Clay, 188 F.R.D. at 490.  The applicable statute of limitations, thus, marks the outer boundary for class membership.  Page v. Pension Ben. Guar. Corp., 130 F.R.D. 510, 513 (D.D.C. 1990); Schmidt, 74 F.R.D. at 428.  Any class that reaches beyond the statute of limitations is overbroad and indefinite.  Payne v. Travenol Labs., 673 F.2d 798, 813-14 (5th Cir. 1982).  Here, actions alleging fiduciary duty breaches are limited to a six-year statute of limitations period at the maximum.  29 U.S.C. § 1113; see also Ranke v. Sanofi-Synthelabo, Inc., 436 F.3d 197, 205 (3d Cir. 2006); Radford v. General Dynamics Corp., 151 F.3d 396, 400 (5th Cir. 1998).  Accordingly, the class definition should be narrowed to only include participants and conduct arising during this statutory period.

### C.   Any Class Definition Should Not Include Future Participants.

As with any proposed class, all the requirements of Rule 23 must be satisfied for future participants.  1 Newberg on Class Actions §3:7 (4th ed., Nov. 2006).  Future participants have no standing under Article III's case and controversy requirement to bring claims as participants for threatened violations of ERISA.  See Minority Police Officers Ass'n of S. Bend v. City of S. Bend, 555 F. Supp. 921, 924 (N.D. Ind. 1983); Strong v. Ark. Blue Cross & Blue Shield, 87 F.R.D. 496, 508 (E.D. Ark. 1980).  Adequate notice, if required, further complicates administration of a class which includes future participants.  See Amchem, 521 U.S. at 628 (noting that future claimants may not realize the extent of the harm they will incur in the future and may not have adequate information to decide whether to opt in).

**D.** **Any Class Should Be Certified Under Rule 23(b)(1) or Rule 23(b)(2).**

If the Court decides to certify some portion of plaintiffs' claims, General Dynamics

recommends that any such class (or sub-classes) be certified under Rule 23(b)(1) or

Rule 23(b)(2).  A Rule 23(b)(1) class would be appropriate to protect General Dynamics against

the risk of inconsistent adjudications.  See Amchem, 521 U.S. at 614.  A Rule 23(b)(2) class

would be appropriate as plaintiffs are seeking equitable relief, not legal relief, in this action.  See

Clay, 188 F.R.D. at 494 (noting that class may be certified under Rule 23(b)(2) where injunctive

or declaratory relief the predominant remedy requested); see also GD Mem. In Support of Mot.

to Strike Jury Demand at 2-4, 6-10.  A Rule 23(b)(3) class is not appropriate, as discussed above,

because it appears questions of law or fact common to members of the class would not

predominate over questions affecting only individual members.  See Clay, 188 F.R.D. at 501-

502; Oshana, 225 F.R.D. at 587.

## CONCLUSION

For the above stated reasons, General Dynamics respectfully requests that the Court enter

an Order denying plaintiffs' motion for class certification.

Respectfully submitted,

GENERAL DYNAMICS CORPORATION

By:    s/ Craig C. Martin
       One of Its Attorneys

       Craig C. Martin
       Daniel J. Winters
       Amanda S. Amert
       Reena R. Bajowala
       JENNER & BLOCK LLP
       330 North Wabash Avenue
       Chicago, Illinois  60611-7603
Dated:   February 28, 2007        Telephone:  (312) 923-2776

25

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel J. Winters, hereby certify that I caused the foregoing **General Dynamics**

**Corporation's Response In Opposition To Plaintiffs' Motion For Class Certification** to be

served electronically with the Clerk of Court of the United States District Court, Southern

District of Illinois, using the CM/ECF system, on February 28, 2007, upon the following counsel

of record:

> Jerome J. Schlichter
> Daniel V. Conlisk
> Heather Lea
> Troy Doles
> Schlichter Bogard & Denton
> 100 South Fourth Street, Suite 900
> St. Louis, Missouri  63102



s/ Daniel J. Winters _____


Document No. 1509726