# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ERIC WILL, et al.,** | |
| **Plaintiffs,** | **Case No. 06-698-GPM** |
| **v.** | **Judge G. Patrick Murphy** |
| **GENERAL DYNAMICS CORPORATION, FIDUCIARY ASSET MANAGEMENT, LLC (f/k/a Fiduciary Asset Management Company), and C.D. WALBRANDT, INC. (f/k/a Fiduciary Asset Management Company),** | **Mag. Judge Clifford J. Proud** |
| **Defendants.** | |

## GENERAL DYNAMICS CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Craig C. Martin
Daniel J. Winters
Amanda S. Amert
Reena R. Bajowala
JENNER & BLOCK LLP
330 N. Wabash Avenue
Chicago, IL 60611
Phone: (312) 222-9350
Fax: (312) 840-7776

Larry E. Hepler
Troy A. Bozarth
HEPLER, BROOM, MACDONALD,
  HEBRANK, TRUE & NOCE, LLC
Two Mark Twain Plaza
103 West Vandalia St., Suite 300
Edwardsville, IL  62025-0510
618  656-0184
618  656-1364 (fax)

*Attorneys for General Dynamics Corporation*

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES .............................................................................................. ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

I.  GENERAL DYNAMICS DID NOT BREACH ITS FIDUCIARY DUTIES AS
    PLAINTIFFS CLAIM IN COUNTS II, III AND IV .............................................. 2

II. GENERAL DYNAMICS DID NOT BREACH ITS FIDUCIARY DUTIES
    REGARDING ANY OF THE DISCRETE ISSUES THAT FORM THE BASIS
    OF PLAINTIFFS' CLAIMS IN COUNTS II, III AND IV. ................................... 6

III. GENERAL DYNAMICS' ARRANGEMENT WITH D&C DOES NOT
     BREACH ITS FIDUCIARY DUTIES AS PLAINTIFFS CLAIM IN COUNT V. ......... 11

IV. GENERAL DYNAMICS IS ENTITLED TO SUMMARY JUDGMENT ON
    PLAINTIFFS' MISREPRESENTATION CLAIM IN COUNT I. ................................... 14

    A.  General Dynamics Has Disclosed The Fees Paid By The Plans, As
        Required By ERISA ...................................................................................... 14

    B.  The Undisputed Evidence Shows That Plaintiffs Understood That There
        Were Fees Associated With The Plans, Which Reduced Their Investment
        Returns. ........................................................................................................ 16

    C.  The Undisputed Evidence Shows That Plaintiffs Were Not Harmed By
        Any Purported Misrepresentation. ............................................................... 17

V.  PLAINTIFFS' CLAIMS, IF ANY, FOR INVESTMENT LOSSES ARE
    BARRED BY THE SAFE HARBOR PROVISION OF § 404(c) ................................... 18

VI. CERTAIN OF PLAINTIFFS' CLAIMS ARE BARRED BY THE APPLICABLE
    STATUTE OF LIMITATIONS. ...................................................................................... 19

CONCLUSION .................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

### United States Supreme Court Cases

<u>Mayle v. Felix</u>, 545 U.S. 644 (2005) ....................................................................... 20

<u>Varity v. Howe</u>, 516 U.S. 489 (1996) ...................................................................... 17

### Seventh Circuit Cases

<u>Armstrong v. LaSalle Bank N.A.</u>, 446 F.3d 728 (7th Cir. 2006)......................... 9, 10, 13

<u>Brock v. Robbins</u>, 830 F.2d 640 (7th Cir. 1987) ..................................................... 4, 13

<u>Brosted v. Unum Life Ins. Co. of Am.</u>, 421 F.3d 459 (7th Cir. 2005) ................... 16, 18

<u>DeBruyne v. Equitable Assurance Society of the United States</u>, 920 F.2d 457 (7th Cir. 1990) ........................................................................................................................ 5

<u>Harzewski v. Guidant Corp.</u>, 489 F.3d 799 (7th Cir. 2007) ...................................... 11

<u>Higgins v. Mississippi</u>, 217 F.3d 951 (7th Cir. 2000)................................................ 17

<u>Jenkins v. Yager</u>, 444 F.3d 916 (7th Cir. 2006)................................................... 18, 19

<u>Johnson v. Georgia-Pac. Corp.</u>, 19 F.3d 1184 (7th Cir. 1994) ..................................... 14

<u>Kamler v. H/N Telecomm. Servs., Inc.</u>, 305 F.3d 672 (7th Cir. 2002) ......................... 16

<u>Librizzi v. Children's Mem'l Med. Ctr.</u>, 134 F.3d 1302 (7th Cir. 1998)...................... 20

<u>Martin v. Consultants & Adm'rs, Inc.</u>, 966 F.2d 1078 (7th Cir. 1992) .................. 19, 20

<u>Wsol v. Fiduciary Management Associates</u>, 266 F.3d 654 (7th Cir. 2001)............... 4, 13

### Other United States Courts Of Appeals Cases

<u>Holliday v. Xerox Corp.</u>, 732 F.2d 548 (6th Cir. 1984) ............................................. 14

<u>Saylor v. Parker Seal Co.</u>, 975 F.2d 252 (6th Cir. 1992)........................................... 14

<u>Vartanian v. Monsanto Co.</u>, 131 F.3d 264 (1st Cir. 1997) ........................................ 14

### United States District Court Cases

<u>Boeckman v. A.G. Edwards, Inc.</u>, No. 05-658-GPM, 2007 WL 4225740 (S.D. Ill. Aug. 31, 2007) ................................................................................................................ 4, 6

DeBruyne v. Equitable Life Assurance Soc'y of the United States, 720 F. Supp. 1342 (N.D. Ill. 1989), aff'd 920 F.2d 457 (7th Cir. 1990)..................................................... 5

Donovan v. Walton, 609 F. Supp. 1221 (S.D. Fla. 1985)............................................. 14

Hecker v. Deere & Co., 496 F. Supp. 2d 967 (W.D. Wis. 2007), appeal docketed, No. 07-3605 (7th Cir. Oct. 26, 2007)................................................................. 16, 17, 19

In re Unisys Corp. Retiree Med. Benefits Litig., No. 969, 2003 WL 252106 (E.D. Pa. 2003) ........................................................................................................................ 18

Ison v. Invacare Corp., No. 02 C 50296, 2004 WL 539982 (N.D. Ill. Mar. 12, 2004) ............... 17

Johnson v. Hopper, No. 05-836-GPM, 2006 WL 3386709 (S.D. Ill. Nov. 22, 2006)................. 11

Kanawi v. Bechtel Corp., No. C-06-05566-CRB (N.D. Cal. May 15, 2007) .............................. 17

Loomis v. Exelon Corp., No. 06 C 4900, 2007 WL 953827 (N.D. Ill. Feb. 21, 2007) ............... 18

Peachin v. Aetna Life Ins. Co., No. 92 C 2739, 1996 WL 22968 (N.D. Ill. Jan. 19, 1996)......... 18

Smiths Am. Corp. v. Bendix Aviation Corp., 140 F. Supp. 46 (D.D.C. 1956) ........................... 16

Taylor v. United Techs. Corp., No. 3:06cv1494 (WWE), 2007 WL 2302284 (D. Conn. Aug. 9, 2007) ................................................................................................................ 16

Thomas v. Aris Corp. of Am., 219 F.R.D. 338 (M.D. Pa. 2003).................................... 18

## Statutes And Regulations

15 U.S.C. § 80........................................................................................................ 11

29 U.S.C. § 1104.................................................................................................... 19

29 U.S.C. § 1109.................................................................................................... 18

29 U.S.C. § 1113.................................................................................................... 19

29 C.F.R. § 2550.404 .......................................................................................... 3, 19

## Miscellaneous

Frank H. Easterbrook, Regulation and Responsibility:  A Note on Banking, 77 Cornell L. Rev. 1079 (July 1992) .................................................................. 3

John H. Langbein & Richard A. Posner, A Revolution in Trust Investment Law, 62 A.B.A. J. 887 (July 1976) .......................................................................... 3

Restatement (Third) of Trusts:  Prudent Investor Rule § 227....................................... 3

U.S. Govt. Accountability Office, Private Pensions: Changes Needed to Provide 401(k)
Plan Participants and the Department of Labor Better Information on Fees  (Nov.
2006) ................................................................................................................................. 11, 15

# INTRODUCTION[1]

Plaintiffs' amended complaint generally alleges that General Dynamics Corporation ("General Dynamics") breached its fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, by allowing excessive fees with regard to its 401(k) Plans.  (Am. Compl. ¶¶ 55-62, 66(m), 79.)  The undisputed evidence shows that the Plans provide participants with above-market returns at below-market fees, and that General Dynamics uses a structured process to monitor returns and fees.  There is no evidence of self-dealing, conflicts of interest, or profiteering by General Dynamics.  Most importantly, there is no evidence that the Plans suffered any loss.  Under well-established precedent, General Dynamics is entitled to summary judgment on plaintiffs' claims of excessive fees.

General Dynamics is also entitled to summary judgment on the claims that plaintiffs identified in Counts II, III and IV about specific arrangements regarding securities lending, float, FAMCO, buy/write funds, finders' fees, revenue sharing, and foreign currency exchange.  (Id. ¶¶ 58-60, 65-60, 75-78.)  With respect to securities lending, float, and FAMCO, the undisputed evidence shows that these arrangements are consistent with the market, were entered into and maintained through a considered process, and caused no losses to the Plans.  Moreover, in light of the undisputed facts that General Dynamics considered the very issues plaintiffs complain about in a deliberative process, General Dynamics should be judged by a deferential standard, and under that standard, General Dynamics did not abuse its discretion.  And with regard to

---

[1] Herein, terms will be defined as follows: the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461, as "ERISA"; the General Dynamics Corporation Savings and Stock Investment Plan and the General Dynamics Corporation Hourly Employees' Savings and Stock Investment Plan as the "Plans" (since this lawsuit was filed, the Plans have been restructured (see Resp. Opp'n Mot. Class Cert. (Dkt. No. 41) at 6); Defendants Fiduciary Asset Management, LLC and C.D. Walbrandt, Inc. as "FAMCO"; Dodge & Cox as "D&C"; and the summary plan descriptions for the Plans as "SPDs."

buy/write funds, finders' fees, revenue sharing, and foreign currency exchange (id. ¶¶ 51, 58), there is simply no evidence to support plaintiffs' allegations.

Plaintiffs allege in Count V that General Dynamics benefited "at the expense of" the participants in the Plans in connection with its arrangement with D&C to offer the D&C Stock Fund ("DODGX"), a mutual fund, as an investment option for the Plans.  (Id. ¶ 72.)  The undisputed evidence, however, shows that General Dynamics did not benefit at the expense of the Plans, that DODGX has below market fees, and that General Dynamics entered the arrangement with D&C to offer DODGX after a process that considered the very types of issues about which plaintiffs complain.  Because General Dynamics did not benefit at the expense of the Plans, there is neither a loss nor a breach, and there is a deliberative process entitling General Dynamics to deference and summary judgment is appropriate.

Finally, plaintiffs complain in Count I that, by statements in the Plans' SPDs, General Dynamics misled them into believing there were no fees associated with their investments in the Plans.  The undisputed evidence shows that General Dynamics disclosed that which it is required to disclose under ERISA; that General Dynamics disclosed that there are fees associated with the Plans that reduce investment returns; and that, in any event, the alleged misrepresentation did not cause any loss or harm to plaintiffs.

Summary judgment should be entered in favor of General Dynamics.  Fed. R. Civ. P. 56.

## ARGUMENT

## I.   GENERAL DYNAMICS DID NOT BREACH ITS FIDUCIARY DUTIES AS PLAINTIFFS CLAIM IN COUNTS II, III AND IV.

The undisputed evidence shows that the Plans provide above-market returns and pay below-market fees.  Dr. Andrew Carron, the President of the National Economic Research Associates, performed an economic analysis of the returns and costs associated with the Plans

and other similar 401(k) plans.  (Ex. 8.)  As Dr. Carron explained, the economically relevant approach to analyzing Plan fees and expenses is by looking at the returns and fees on the Plans as a whole.[2]  (Id. at 16; Ex. 9 at 1-2.)  Dr. Carron analyzed the returns and fees of the various investment funds by comparing them to the returns of comparable funds over the period from 2000-2006.  (Ex. 8 at 7-25.)  Dr. Carron concluded that the Plans' returns exceeded the market in that the Plans' funds out-performed comparable funds, and that the Plans' fees were substantially lower than industry averages.  (Id.)  Plaintiffs cannot offer any evidence to the contrary (i.e., that the Plans suffered losses), as demonstrated by the report of their expert, David Witz.

It is also undisputed that General Dynamics prudently monitored returns and fees and fees.  Every quarter, General Dynamics' senior management receives an investment report which identifies the return, net of fees, for each of the investment funds offered within the Plans.  (Ex. 2 ¶ 17; Ex. 3 ¶ 28; Ex. 74.)  That performance is then compared against the funds' benchmarks over various periods.  (Ex. 2 ¶ 17; Ex. 3 ¶ 28; Ex. 74.)  These reports also contain information regarding the estimated fees associated with each fund, reported in both dollars and basis points.  (Ex. 74.)  In addition to these reports, the Investment Review Committee ("IRC"), a management committee, and the Benefit Plans and Investment Committee ("BPIC"), a committee of the board of directors, are further updated on performance (net of fees) at each regular meeting.  (Ex. 2 ¶ 17; Ex. 3 ¶ 28.) In turn, the BPIC regularly reports the returns of the investment funds (net of fees) to the General Dynamics Board of Directors.  (Ex. 3 ¶ 28.)  Reviewing this process outlined

---

[2] The focus should be on portfolios as a whole because from the beneficiary's standpoint, what counts is the performance of the whole portfolio, rather than its individual components.  See John H. Langbein & Richard A. Posner, A Revolution in Trust Investment Law, 62 A.B.A. J. 887, 889 (July 1976); see also Frank H. Easterbrook, Regulation and Responsibility:  A Note on Banking, 77 Cornell L. Rev. 1079 (July 1992) (discussing modern portfolio theory); 29 C.F.R. § 2550.404a-1(b)(2)(ii) (DOL regulation adopting the modern portfolio theory); Restatement (Third) of Trusts:  Prudent Investor Rule § 227 (discussing "prudent investor rule" as focusing on the investment portfolio as a whole).

above, Donald C. Stone, President of Plan Sponsor Advisors with twenty-three years of retirement plan industry experience, concluded that General Dynamics' process for monitoring investments and its process for monitoring fees are consistent with industry custom and practice. (Ex. 6 at 6-8.)  Plaintiffs cannot offer any evidence to the contrary (i.e., that General Dynamics had no process to monitor returns and fees), as illustrated by the report of their expert, David Witz.

Under these circumstances, summary judgment in favor of General Dynamics is appropriate.  "To establish a breach of fiduciary duty, a plaintiff must show first, a breach of duty by a fiduciary and second, a prima facie case of loss to the plan, whereupon the burden shifts to the fiduciary to prove that the loss was not caused by the breach of duty."  Boeckman v. A.G. Edwards, Inc., No. 05-658-GPM, 2007 WL 4225740, at *3 (S.D. Ill. Aug. 31, 2007) (citations omitted).

In this case summary judgment is appropriate because plaintiffs have not and cannot establish a prima facie case of loss to the plan.  Here, the Plans suffered no loss.  By achieving returns exceeding the market with fees less than the market, there is no economic loss to the Plans.  The Seventh Circuit identified loss as the dispositive issue in Wsol v. Fiduciary Management Associates, stating: "The plaintiffs cannot prevail unless the breach of fiduciary duty either imposed a loss on the plan or generated a profit for [defendant] 'through use of assets of the plan' by [defendant]."  266 F.3d 654, 656 (7th Cir. 2001) (citations omitted); see also Brock v. Robbins, 830 F.2d 640, 644-46 (7th Cir. 1987).  Here, there is no loss, nor can there be a loss when the Plans returns exceed market at fees lower than market.  Because plaintiffs have not produced evidence of a loss to the Plan as a whole, they cannot establish that element of their claim, and summary judgment should be granted for this reason alone.

4

Second, there is no evidence that General Dynamics acted imprudently -- in other words, there is no evidence of any breach of fiduciary duty with regard to General Dynamics' monitoring of Plan fees and returns.  The undisputed evidence shows that General Dynamics monitors the Plans' fees and returns after fees.  (See Ex. 2 ¶ 17; Ex. 3 ¶ 28; Ex. 74.)  Mr. Stone reviewed the process that General Dynamics uses to monitor the Plans' fees and returns after fees, and concluded that it was a sound process involving review by General Dynamics' senior executives and a committee of its board of directors, as well as a consultant (FAMCO) with expertise in the investment industry.  (See id.)

Conclusory assertions of imprudence are not sufficient to preclude summary judgment. See DeBruyne v. Equitable Life Assurance Soc'y of the United States ("DeBruyne I"), 720 F. Supp. 1342, 1347-48 (N.D. Ill. 1989), aff'd 920 F.2d 457 (7th Cir. 1990) ("DeBruyne II").  In DeBruyne, the district court granted summary judgment where there was a loss to the plans, but there was no "basis for concluding that the alleged breach of fiduciary duty caused plaintiffs' loss." DeBruyne II, 920 F.2d at 465; see DeBruyne I, 720 F. Supp. at 1349.  Plaintiffs alleged that defendant, an investment manager for an ERISA-governed retirement fund, breached its fiduciary duty by following an imprudent investment allocation in its Balanced Fund (i.e. failing to invest substantially in government bonds and fixed income securities), which left the fund particularly vulnerable to the 1987 stock market crash.  DeBruyne II, 920 F.2d at 462; DeBruyne I, 720 F. Supp. at 1343.  The district court found that a conclusory assertion of imprudence, like that made by plaintiffs in this case, does not create a genuine issue of material fact sufficient to preclude summary judgment.  DeBruyne I, 720 F. Supp. at 1349; DeBruyne II, 920 F.2d at 465. Thus, summary judgment was appropriate because "plaintiffs [] produced no specific evidence" of imprudence.  DeBruyne I, 720 F. Supp. at 1349; see DeBruyne II, 920 F.2d at 465.  Similarly,

in this case, there is nothing more than plaintiffs' speculation to suggest imprudence by General Dynamics.

General Dynamics recognizes that this Court denied cross-motions for summary judgment in Boeckman, noting that "'[t]ypically, whether a fiduciary acted prudently – or in other words, as a reasonably prudent fiduciary – is a question of fact.'"  2007 WL 4225740, at *4 (internal citation omitted).   However, Boeckman does not foreclose summary judgment here.  In Boeckman, there was substantial conflicting evidence of a loss (paying higher fees for a mutual fund than for a separately managed account) and evidence of a breach (failing to consider a separately managed account) that could logically have caused the loss.  Id.  Here, it is undisputed that there is no loss (Ex. 8 at 7-16, 20-24), much less any loss caused by an alleged breach.  Moreover, it is undisputed that General Dynamics monitors returns and fees as outlined above, and used a reasonable process to consider each of the decisions and arrangements challenged by plaintiffs, as discussed in Section II below.  (Ex. 2 ¶¶ 17-18; Ex. 3 ¶¶ 28-29; Ex. 74.)  Accordingly, judged by the applicable Seventh Circuit standards, summary judgment is appropriate in this case.

## II.   GENERAL DYNAMICS DID NOT BREACH ITS FIDUCIARY DUTIES REGARDING ANY OF THE DISCRETE ISSUES THAT FORM THE BASIS OF PLAINTIFFS' CLAIMS IN COUNTS II, III AND IV.

General Dynamics is entitled to summary judgment with regard to plaintiffs' allegations concerning securities lending, float, FAMCO, finders' fees, foreign currency exchange and revenue sharing.  With regard to the first three, the undisputed evidence is as follows:

_Securities Lending and Float._  As the Plans' administrator, General Dynamics contracts with Northern Trust, the Plans' trustee, for several services, including providing for the Plans' participation in, and receipt of income from, securities lending, and providing for a mechanism under which the Plans receive the value of float (the interest income earned on benefits payment

checks that have been written, but not yet cashed).  (Ex. 1 at ¶¶ 49-76; Ex. 2 ¶¶ 19-24; Ex. 71.)

Prior to 2000, General Dynamics' Plan documents did not expressly permit securities lending,

and General Dynamics had decided not to loan securities owned by the Plans.  (Ex. 1 ¶ 70; Ex. 2

¶ 21.)  In 2000, however, General Dynamics amended its Master Trust Agreement to allow

securities lending.  (Ex. 1 ¶ 71; Ex. 2 ¶¶ 22-23; Ex. 32.)  As part of its contract with Northern

Trust, from August 2000 to July 2002, General Dynamics participated in a securities lending

program with Northern Trust whereby the Plans received 70% of the money earned from

securities lending, and Northern Trust received 30% as its fee.  (Ex. 1 ¶¶ 73-75; Ex. 2 ¶ 24; Ex.

65 at Sch. C.)  Effective July 2002, after a competitive bidding process, General Dynamics

secured an 80/20 fee split.  (Ex. 1 ¶ 75; Ex. 68.)  The income generated from the securities

lending program is credited to the accounts maintained by the Plans at Northern Trust, and none

of it is received by General Dynamics.  (Ex. 1 ¶¶ 74-75.)

With regard to float (i.e. the interest accrued on funds after a check is issued by the

trustee but before it is negotiated), General Dynamics negotiated a better-than-market

arrangement with Northern Trust.  (Ex. 6 at 17; Ex. 1 ¶¶ 49-68, 76.)  Under that arrangement, the

Plans pay the standard benefit payment fee (i.e., for processing distributions to participants) and

keep the benefit of float.  (Ex. 6 at 17; Ex. 58; Ex. 67; Ex. 69.)  This benefit takes the form of a

credit against Northern Trust's benefit payment fees and, thus, directly benefits the Plans (and

not General Dynamics).  (Ex. 1 ¶ 76; Ex. 6 at 17.)

*FAMCO.*  As the Plans' administrator, General Dynamics also contracts with FAMCO

for investment management and other services.  (See Ex. 70; Ex. 75.)  In 1994, General

Dynamics decided to retain FAMCO as a service provider for the Plans.  (Ex. 3 ¶¶ 6-15.)

Effective October 1, 1994, General Dynamics and FAMCO entered into an investment

7

administration and management service agreement, which was reviewed and renewed most recently in 2004, when General Dynamics and FAMCO entered into a revised investment administration and management service agreement.  (<u>Id.</u> ¶¶ 16-19; Ex. 2 ¶ 8; Ex. 70; Ex. 75.) General Dynamics' initial decision to retain FAMCO was discussed, considered and deliberated by senior management and the relevant board committee.  (<u>Id.</u> ¶¶ 16-19.)  The decision followed a presentation detailing the investment management and administrative services to be provided to General Dynamics' employee benefit plans and the fees to be charged for these services by FAMCO; the relative costs to be charged by FAMCO versus the industry averages for providing similar services (which data indicated that FAMCO's proposed fees would be significantly lower than the industry averages); and the contractual arrangements.  (Ex. 3 ¶¶ 6-15.)  Subsequent renewals have involved similar review processes.  (<u>See</u> <u>id.</u> ¶¶ 16-18; Ex. 2 ¶ 8.)

General Dynamics is entitled to summary judgment with regard to securities lending, float and FAMCO for three reasons.

First, there is no loss to the Plans because the fees paid by the Plans are substantively reasonable.  Not only are the overall fees paid by the Plans reasonable in the aggregate, as discussed in Section I above, but the fees in connection with the disaggregated individual components (securities lending, float and FAMCO) are reasonable as well.  General Dynamics' arrangements with Northern Trust regarding securities lending and float, as well as with FAMCO, are substantively reasonable, consistent with the market, and consistent with industry standards, customs and practices; accordingly, there is no loss.  (<u>See</u> Ex. 6 at 8-11, 14-17; Ex. 1 ¶¶ 49-76; Ex. 2 ¶¶ 7-8, 19-24; Ex. 3 ¶¶ 6-19.)  Dr. Carron has reviewed the arrangements at issue, and concluded that they are substantively reasonable, in that the Plans' returns (net of fees) are above-market.  (Ex. 8 at 2; Ex. 9 at 1-4; <u>see also</u> Ex. 6 at 8-11, 14-17.)  Mr. Stone noted that

the Plans pay FAMCO fees for investment management and other services, which are reasonable and less than industry medians.  (See Ex. 6 at 9-10; see also Ex. 8 at 24; Ex. 9 at 2-3.)

Second, there is no breach, because General Dynamics follows a prudent process with respect to fees.  Even when overall fees and returns are disaggregated into separate line items for securities lending, float and FAMCO, General Dynamics specifically followed reasonable and prudent procedures, acted in the best interests of Plan participants, and acted consistent with industry standards, customs and practices.  (See Ex. 6 at 8-11, 14-17; Ex. 1 ¶¶ 49-76; Ex. 2 ¶¶ 7-8, 19-24; Ex. 3 ¶¶ 6-19.)  Mr. Stone has reviewed these arrangements and determined that they are consistent with industry standards, customs and practices.  (Ex. 6 at 6-11, 14-17.)  Mr. Stone has also concluded that they are procedurally reasonable, in that General Dynamics' process for negotiating and monitoring fees is consistent with industry standards, customs and practices, and that FAMCO possessed institutional knowledge regarding the Plans that no other firm had.  (Id.)

Moreover, General Dynamics respectfully submits that its considered decisions regarding these items are entitled to deferential review.  Although courts reviewing a fiduciary's decisions inquire into the process the fiduciary followed, the Seventh Circuit has held that when a fiduciary makes a decision that balances competing concerns, the decision is entitled to deferential review. In Armstrong v. LaSalle Bank N.A., 446 F.3d 728, 733 (7th Cir. 2006), the Seventh Circuit considered whether an ESOP trustee breached its fiduciary duties in connection with the valuation of stock in the ESOP by over-valuing company stock for redemption purposes, such that employees who redeemed their stock were over-compensated at the expense of the plan. The Court first considered whether its review of the trustees' decision in administering the ESOP should be deferential or plenary.  Id. at 732.  The Court noted that "[i]n general, judicial review of the decisions of an ERISA trustee as of other trustees is deferential unless there is a conflict of

9

interest, which there is not here." Id.  Noting that the valuation of ESOP stock was not

"analogous to adjudication," the Court nevertheless reasoned that "there are rules as to how

much deference a court should give nonadjudicators, a pertinent example being the business-

judgment rule, which decrees a light hand for a court asked to invalidate a business decision."

Id. at 733 (citation omitted).  The Court held:  "We must not seat ESOP trustees on a razor's

edge.  We agree therefore with those courts that review the ESOP trustee's balancing decision

deferentially."  Id. (citations omitted).  Here, General Dynamics followed a process, duly

considered its options, and therefore is entitled to deference with respect to arrangements it

makes for the Plans.

 The same deferential standard should be applied to General Dynamics' decisions with

regard to each of the arrangements about which plaintiffs complain.  In a large 401(k) plan, there

are a myriad of decisions that General Dynamics makes and needs to make.  Absent self-dealing

or a conflict of interest, those decisions should be reviewed deferentially; otherwise, General

Dynamics is on the "razor's edge."  Take, for example, securities lending:  if General Dynamics

does not allow securities lending, some might contend it is breaching its duties by not capturing

potential, incremental revenue for the Plans; but if General Dynamics does allow securities

lending, others might contend it is placing the Plans at undue risk, or as alleged in this case, that

it did not negotiate as good a deal with Northern Trust as it could or should have.  However, so

long as General Dynamics has considered securities lending (Ex. 1 ¶¶ 49-75; Ex. 2 ¶¶ 19-24; Ex.

4 ¶ 23; Ex. 71), its arrangements should be judged deferentially for abuse of discretion.

 Finally, plaintiffs have no evidence to support their allegations relating to finders' fees,

foreign currency exchange or revenue sharing, despite taking extensive discovery.  Therefore,

summary judgment in favor of General Dynamics is appropriate.  Fed. R. Civ. P. 56; Johnson v.

Hopper, No. 05-836-GPM, 2006 WL 3386709, at *1 (S.D. Ill. Nov. 22, 2006).

### III.    GENERAL DYNAMICS' ARRANGEMENT WITH D&C DOES NOT BREACH ITS FIDUCIARY DUTIES AS PLAINTIFFS CLAIM IN COUNT V.

As the Plans' administrator, General Dynamics selects the investment options and managers available through the Plans.  In 2006, General Dynamics added a Large Cap Value Fund investment option, specifically DODGX, a mutual fund managed by D&C.  (Ex. 1 ¶ 77-85; Ex. 2 ¶¶ 9-16; Ex. 3 ¶¶ 20-27; Ex. 4 ¶¶ 7-18.)  Contrary to plaintiffs' allegations, however, General Dynamics did not benefit at the expense of the Plans.  (See Am. Compl. at 17.)  D&C charges a standard fee set in its Prospectus to all investors in its mutual funds, including DODGX mutual fund[3] because, as a matter of law, D&C cannot charge different fees to different investors in the same class.[4]  (See Ex. 24 at 2-3; Ex. 1 ¶ 85; Ex. 2 ¶ 15; Ex. 3 ¶ 23; Ex. 4 ¶ 16.)  D&C's fees for managing Plan assets do not vary in relation to D&C's fees for managing pension assets in a separately managed account.  (Id.)  General Dynamics could not have secured a lower fee to obtain D&C's services as large cap value investment fund manager for its Plan assets.  (Ex. 4 ¶ 16.)

At the time General Dynamics added DODGX, General Dynamics could not add a D&C separately managed account because D&C did not offer one.  (Ex. 4 ¶ 14; Ex. 24 at 2; Ex. 76;

---

[3] D&C also rebates approximately ten basis points to investors, like the Plans, who have an administrator (Hewitt) that performs some administrative services D&C would otherwise provide.  (Ex. 1 ¶ 81, 85; Ex. 24 at 20-21.)  The net fee paid by the Plans is approximately 42 basis points, or 0.42% of assets under management.  (Ex. 1 ¶ 85.)

[4] D&C cannot charge a different fee to General Dynamics than it charges to other investors in DODGX, as a matter of law.  See 15 U.S.C. §§ 80a-18(f)(1) & (g); U.S. Govt. Accountability Office, Private Pensions: Changes Needed to Provide 401(k) Plan Participants and the Department of Labor Better Information on Fees 10 (Nov. 2006) ("GAO Report"); see also Mem. in Supp. Mot. to Dismiss (Dkt. No. 123) at 9 n.10. General Dynamics cannot, as a matter of law, have breached its fiduciary duty by not violating the law to somehow change the fees required to be charged for a mutual fund.  See Harzewski v. Guidant Corp., 489 F.3d 799, 808 (7th Cir. 2007).

Ex. 77 at Sch. F, 1.D.)  So, in adding DODGX, General Dynamics had two options:  either let D&C take the Plans' investments into account when calculating fees paid by the pension plans in the separately managed accounts or not.  (Ex. 4 ¶ 16.)  Faced with these options, General Dynamics chose the former.  (Ex. 24 at 2-3; Ex. 1 ¶ 85; Ex. 2 ¶ 15; Ex. 3 ¶ 23; Ex. 4 ¶ 16.)  Notably, neither option affected the fees paid by the Plans.[5]  (Ex. 24 at 2-3; Ex. 1 ¶ 85; Ex. 2 ¶ 15; Ex. 3 ¶ 23; Ex. 4 ¶ 16.)

General Dynamics' board, management and advisors understood the fact that the fees were fixed for the Plans, understood that the fees were tiered for the pension plan, and understood that the pension plan could receive credit (in the form of a lower percentage on a tiered fee schedule) for the Plan monies invested in the mutual fund, or not.  (Ex. 1 ¶ 83; Ex. 2 ¶¶ 14-15; Ex. 3 ¶¶ 23-27.)  Likewise, they understood that the credit was incidental, and did not form the basis of the recommendations or decision to add D&C as an investment manager for the Plans.  (Ex. 1 ¶ 83; Ex. 2 ¶¶ 14-15; Ex. 3 ¶¶ 23-27.)

Under these circumstances, General Dynamics did not breach its fiduciary duty by selecting D&C for the Plans.  First, D&C's returns are sound, and its fees are reasonable and not excessive.  (See Ex. 6 at 13-14; Ex. 79.)  General Dynamics' evaluation of fees for large cap value investment managers indicated a range of fees between approximately 25 basis points and 75 basis points.  (Ex. 1 ¶ 81; Ex. 4 ¶ 14-15.)  The Plans are paying a fee of approximately 42 basis points for an investment manager that consistently outperforms other large cap value fund managers.  (Ex. 1 ¶ 85; Ex. 6 at 12-14; Ex. 79.)  Dr. Carron reviewed the fees and returns associated with DODGX, and concluded that they were substantively reasonable, in that the

---

[5] Contrary to plaintiffs' allegation that the Plans pay fees pursuant to a tiered fee structure (Am. Compl. ¶ 76), the fees paid by the Plans are not subject to the tiered fee structure, and on summary judgment, that fact is indisputable.  (See Ex. 1 ¶ 85.)

returns on DODGX, net of fees, are higher than those of comparable funds.  (Ex. 9 at 3-4.)
Applying the standard recognized by the Courts, see Wsol, 266 F.3d at 656-58; see also Brock,
830 F.2d at 644-46, the undisputed evidence, therefore, indicates that the fees paid for DODGX
are substantively reasonable for the services performed.  Thus, no loss to the Plans resulted from
the selection of DODGX.

Second, General Dynamics' process demonstrates that the decision to add D&C satisfied
its fiduciary duties.  (See Ex. 1 ¶¶ 77-83; Ex. 2 ¶¶ 12-15; Ex. 3 ¶¶ 20-27; Ex. 4 ¶¶ 8-18.)  General
Dynamics conducted a review of the possible options for investment managers, and it studied
those options via a consultant, FAMCO.  (Ex. 1 ¶¶ 77-83; Ex. 2 ¶¶ 12-15; Ex. 3 ¶¶ 20-27.)  The
consultant determined that D&C charged a competitive rate and had garnered above-market
returns, and accordingly recommended D&C.  (Ex. 4 ¶¶ 8-18).  The consultant's
recommendations were then reviewed and deliberated on, first by General Dynamics'
management, and then at the board level.  (Ex. 1 ¶¶ 77-83; Ex. 2 ¶¶ 12-15; Ex. 3 ¶¶ 20-27.)  Mr.
Stone reviewed General Dynamics' decision to add DODGX, and concluded that it was
reasonable, and consistent with industry standards, customs and practices.  (Ex. 6 at 12-14.)
General Dynamics' process is, thus, prudent; there is no breach.

Third, General Dynamics' decision to add DODGX and the fee arrangement with D&C
(Ex. 1 ¶¶ 77-83; Ex. 2 ¶¶ 12-15; Ex. 3 ¶¶ 20-27; Ex. 4 ¶¶ 8-18) should be reviewed deferentially
for abuse of discretion, because General Dynamics considered the very issues about which
plaintiffs generally complain (see Am. Compl. ¶¶ 57-58, 72-78).  As noted above, under
Armstrong, a fiduciary cannot be seated on a razor's edge in making its decisions, so fiduciaries
are afforded discretion.  Armstrong, 446 F.3d at 733.

Finally, the fact that the pension plan (of which both Cotterman and Kuczon are participants and beneficiaries) may receive an incidental benefit -- lower fee rates for its separately managed account -- does not invalidate the sound substantive result or prudent process General Dynamics followed.  The "issue under ERISA is not whether [General Dynamics] benefits from any payment arrangement, but whether Plan assets are being used to benefit [General Dynamics] rather than the Plan participants."  Saylor v. Parker Seal Co., 975 F.2d 252, 256 (6th Cir. 1992).  Employers may reap an incidental benefit from their decisions under ERISA.  Johnson v. Georgia-Pac. Corp., 19 F.3d 1184, 1190 (7th Cir. 1994).  ERISA's provisions cannot be read as a prohibition against any decisions of an employer with respect to an ERISA plan which has the obvious primary purpose and effect of benefiting the employees, and in addition the incidental side effect of being prudent from the employer's economic perspective.  Holliday v. Xerox Corp., 732 F.2d 548, 551-52 (6th Cir. 1984); Donovan v. Walton, 609 F. Supp. 1221, 1245 (S.D. Fla. 1985).  Such an incidental benefit also does not violate ERISA's "exclusive purpose" standard.  See Donovan, 609 F. Supp. at 1246; see also Vartanian v. Monsanto Co., 131 F.3d 264, 268 (1st Cir. 1997).  Because the Plan participants were not affected in any way by the fee arrangement for the pension plans, any incidental benefit was not a breach of fiduciary duty.

## IV.   GENERAL DYNAMICS IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' MISREPRESENTATION CLAIM IN COUNT I.

### A.   General Dynamics Has Disclosed The Fees Paid By The Plans, As Required By ERISA.

Plaintiffs' misrepresentation claim fails because General Dynamics has disclosed all of the information regarding fees that ERISA requires.  General Dynamics causes the Plans to pay the expenses associated with the Plans.  (Ex. 23 at 25; Ex. 26 at Sch. C.)  The Plan trustee pays the Plan and Master Trust-level expenses (the assets of both Plans are held by a single Master

Trust (see Ex. 32)) from the corpus of the Master Trust; and the Master Trust's net income (after the inclusion of the Plan and Master Trust-level expenses) is allocated to Plan participants via a change to the net asset value of the underlying investment funds in which each participant has a beneficial interest.  (See Ex. 83 at Nos. 4, 6, 8, 10, 12, 14, 16, 18.)  That value, in turn, is reflected on Plan participants' account statements as an individual account balance.  (See id.)  Each investment fund, thus, has a rate of return (after expenses) and a cost ratio associated with it.  (See Ex. 22.)

ERISA requires Plan sponsors to provide participants with an SPD, account statements, and a summary annual report.  See GAO Report at 15.  General Dynamics provides each of these documents to participants in satisfaction of ERISA's disclosure requirements.  29 U.S.C. §§ 1021-1025.  The SPDs inform Plan participants as to the expense ratios for each of the investment funds offered within the Plans -- which is the approximate amount by which the Plan-level expenses (i.e., for record-keeper, trustee and investment manager services) reduce the rate of return or gross earnings of the respective funds.  (See Ex. 22, Ex. 23.)  The SPD tells the Plan participants that the Plan-level expenses are paid by the Plans, thus reducing the gross earnings of the investment funds in the Plans.  (Ex. 23 at 25; Ex. 22.)  The resulting net income of the various investment funds is allocated to Plan participants, as reflected on Plan participants' account statements.  (Ex. 25; see also Ex. 29; Ex. 31.)  The annual reports set forth the total expenses paid by the Plans.  (Ex. 26.)

By disclosing that which it is required to disclose under ERISA, General Dynamics is entitled to summary judgment.  As the court in Hecker stated recently, "[w]here as here Congress has by statute and related regulation, created detailed rules governing disclosure requirements, it would be inappropriate to ignore and augment them using the general power to define fiduciary

obligations." <u>Hecker v. Deere & Co.</u>, 496 F. Supp. 2d 967, 974 (W.D. Wis. 2007), <u>appeal docketed</u>, No. 07-3605 (7th Cir. Oct. 26, 2007); <u>see also</u> <u>Taylor v. United Techs. Corp.</u>, No. 3:06cv1494 (WWE), 2007 WL 2302284, at *4 (D. Conn. Aug. 9, 2007).

**B.    The Undisputed Evidence Shows That Plaintiffs Understood That There Were Fees Associated With The Plans, Which Reduced Their Investment Returns.**

Plaintiffs cannot maintain their misrepresentation claim because the undisputed facts demonstrate that they understood there were fees associated with the Plans that reduced their investment returns.  A breach of fiduciary duty claim premised on an alleged misrepresentation made to plaintiffs necessarily fails where, as here, the plaintiffs were not deceived by or did not believe the alleged misrepresentation; unless the plaintiffs were deceived by the misrepresentation, any purported harm they suffered cannot have been caused by the misrepresentation.  <u>See</u> <u>Brosted v. Unum Life Ins. Co. of Am.</u>, 421 F.3d 459, 466 (7th Cir. 2005); <u>Kamler v. H/N Telecomm. Servs., Inc.</u>, 305 F.3d 672, 681-682 (7th Cir. 2002).

Prior to filing this lawsuit, plaintiffs demonstrated that they understood there were fees paid by the Plans.  Starting in May 2006, plaintiffs sent letters to General Dynamics requesting detailed information regarding the amount of fees paid to the various service providers to the Plans.  (Ex. 1 ¶ 22; Exs. 14-15, 18-19.)  In response, General Dynamics provided documents identifying the compensation paid by the Plans to each service provider, an operating expense ratio for each investment option offered within the Plans, and the Plan documents and Master Trust Agreement.  (Ex. 1 ¶ 23; Ex. 17; Ex. 20; Ex. 21.)  Plaintiffs alleged in their original complaint that the fees paid by the Plans were improper because they were excessive or unreasonable, and therefore improperly reduced their individual account balances.  (<u>See</u> Compl. ¶¶ 5, 7, 39, 57, 60-61.)  <u>See</u> <u>Smiths Am. Corp. v. Bendix Aviation Corp.</u>, 140 F. Supp. 46, 53-54 (D.D.C. 1956).

During discovery, plaintiffs testified at their depositions (in January 2007) that they understood there were fees associated with the Plans.  (See Ex. 10 at 29, 50-51, 112-13; Ex. 11 at 56, 59.)  See Higgins v. Mississippi, 217 F.3d 951, 955 (7th Cir. 2000).  Plaintiffs' previous filings and interrogatory responses show they understood the Plans were paying fees.  (Pls. Mem. In Supp. of Mot. for Class Cert. (Dkt. No. 25) at 3, 10, 19; Ex. 86 at Nos. 7, 16, 25.)  See Ison v. Invacare Corp., No. 02 C 50296, 2004 WL 539982, at *1 (N.D. Ill. Mar. 12, 2004).  Accordingly, because plaintiffs understood that there are fees associated with their investments in the Plans, and thus cannot establish a misrepresentation, General Dynamics is entitled to summary judgment.

### C.     The Undisputed Evidence Shows That Plaintiffs Were Not Harmed By Any Purported Misrepresentation.[6]

General Dynamics recognizes that, contrary to the Deere holding, one district court held that a failure to disclose fee information may give rise to a breach of fiduciary duty claim if plaintiffs can establish a misrepresentation claim under Varity v. Howe, 516 U.S. 489 (1996).  Kanawi v. Bechtel Corp., No. C-06-05566-CRB, at *3-4 (N.D. Cal. May 15, 2007) (slip op.) (Ex. 81).  However, even under Bechtel, General Dynamics is still entitled to summary judgment because there is no misrepresentation in that General Dynamics disclosed that the fees associated with the Plans reduced the rates of return in the funds offered by the Plans (as explained in Section IV. B. above), and moreover, there is no loss or harm caused by the alleged misrepresentation.

The alleged misrepresentations did not harm plaintiffs, through detrimental reliance or otherwise.  "To state a claim for breach of fiduciary duty under ERISA, the plaintiff must

---

[6] Plaintiffs' misrepresentation claims also fail because they cannot show intent to deceive, they did not rely upon any misrepresentation and there is no remedy for a misrepresentation in plan documents absent reliance.  (See Mem. in Supp. of Mot. to Dismiss (Dkt. 123) at 5-8.)

establish . . . that the breach caused harm to the plaintiff." Brosted, 421 F.3d at 465; see also 29

U.S.C. § 1109; Loomis v. Exelon Corp., No. 06 C 4900, 2007 WL 953827 (N.D. Ill. Feb. 21,

2007).  Typically, the harm in a misrepresentation or failure-to-disclose case arises from reliance.

Reliance may not be presumed in an ERISA case.  Peachin v. Aetna Life Ins. Co., No. 92 C

2739, 1996 WL 22968, at *5 (N.D. Ill. Jan. 19, 1996); Thomas v. Aris Corp. of Am., 219 F.R.D.

338, 342 (M.D. Pa. 2003); In re Unisys Corp. Retiree Med. Benefits Litig., No. 969, 2003 WL

252106, at *5 n.13 (E.D. Pa. Feb. 4, 2003).

Plaintiffs cannot demonstrate that they were harmed through individual reliance on the

alleged misrepresentations.  Plaintiffs did not rely on any supposed belief that the Plans were fee-

free because plaintiffs have admitted they were aware that there were such fees.  (See Ex. 10 at

50-51; Ex. 11 at 56.)  Plaintiffs testified that they would not have changed their investment

decisions if they had known more about the fees paid by the Plans.  (Ex. 10 at 116; Ex. 12 at

62-63.)  Finally, nowhere do plaintiffs say that "but for" the alleged misrepresentation, they

would have done something different, like not participate in the Plans.

## V.   PLAINTIFFS' CLAIMS, IF ANY, FOR INVESTMENT LOSSES ARE BARRED BY THE SAFE HARBOR PROVISION OF § 404(c).

Although the Plans did not actually suffer any losses, plaintiffs apparently contend that

General Dynamics is responsible for "losses" plaintiffs allegedly incurred as a result of their

decisions to invest in what they now claim are investments with excessive and unreasonable fees.

(Am. Compl. at 21 ¶ 1.)  Section 404(c) of ERISA precludes this claim.  Because General

Dynamics has complied with the safe harbor provisions of § 404(c), including those provisions

that require disclosure of fees, it is not responsible for losses resulting from plaintiffs' decisions

to invest in what they now claim are investments with excessive and unreasonable fees.  See 29

U.S.C. § 1104(c); Jenkins v. Yager, 444 F.3d 916, 923-24 (7th Cir. 2006); see also 29 C.F.R.

§ 2550.404c-1(d)(2).  (Ex. 1 ¶¶ 22-48; Exs. 22-31.)  Accordingly, General Dynamics is entitled to summary judgment on any such claim.  Jenkins, 444 F.3d at 923-24.

No genuine issue of material fact exists that the Plans satisfy § 404(c)'s criteria to establish a safe harbor from plaintiffs' investment losses.  See 29 C.F.R. § 2550.404c-l.  (Ex. 1 ¶¶ 17-18, 22-48; Ex. 22; Ex. 23 at 21; Ex. 24; Ex. 25; Ex. 26 at Sch. C; Ex. 27 at 4; Exs. 28-31.) The regulations to § 404(c) require plans to disclose to participants only a "description of any transaction fees and expenses" and a "description of the annual operating expenses of each designated investment alternative."  29 C.F.R. § 2550.404c-1(b)(2)(i)(B)(1)(v) & (2)(i) (emphasis added).  The SPDs inform Plan participants of transaction fees and expenses they may incur (Ex. 23 at 25) and the Fund Fact Sheets clearly disclose the annual operating expenses in the format required by the DOL regulations.  (Ex. 22.)  Accordingly, because General Dynamics satisfied its investment-specific fee disclosure obligations, General Dynamics is entitled to summary judgment under § 404(c) for any alleged investment loss claims.  See Deere, 496 F. Supp. 2d at 975.

## VI.   CERTAIN OF PLAINTIFFS' CLAIMS ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.

ERISA limits the period for bringing a claim for breach of fiduciary duty to six years after the breach occurs, or three years after a plaintiff has actual knowledge of the breach, except in cases of fraudulent concealment, for which plaintiffs bear the burden of proof.  See 29 U.S.C. § 1113; Martin v. Consultants & Adm'rs, Inc., 966 F.2d 1078, 1093-95 (7th Cir. 1992).  Here, the evidence shows no fraud or concealment.  Counts II, III and IV are time-barred to the extent they are based on alleged deficiencies that occurred prior to September 11, 2000, including claims related to the process General Dynamics employed before retaining FAMCO in 1994. See Martin, 966 F.2d at 1088-89.  Count I is time-barred to the extent it is based on purported

misrepresentations that were made prior to October 25, 2004, three years before the filing of the amended complaint, under ERISA § 413(2), because the very same documents upon which plaintiffs premise their misrepresentation claim contain information that gave them "actual knowledge" of any purported misrepresentation.  (See Am. Compl. ¶ 44).  See Martin, 966 F.2d at 1086, 1098; Librizzi v. Children's Mem'l Med. Ctr., 134 F.3d 1302, 1305-07 (7th Cir. 1998).

## CONCLUSION

For all the foregoing reasons, General Dynamics respectfully requests that the Court grant its motion for summary judgment, and enter judgment in its favor and against plaintiffs on all counts against General Dynamics (Counts I-V of the amended complaint).


Dated: January 4, 2008                               Respectfully submitted,

                                                     GENERAL DYNAMICS CORPORATION

                                                     By:    s/  Troy A. Bozarth
                                                            One of Its Attorneys

HEPLER, BROOM, MACDONALD,                            JENNER & BLOCK LLP
   HEBRANK, TRUE & NOCE, LLC                          Craig C. Martin
Larry E. Hepler                                      Daniel J. Winters
Troy A. Bozarth                                      Amanda S. Amert
Two Mark Twain Plaza                                 Reena R. Bajowala
103 West Vandalia St., Suite 300                     330 N. Wabash Avenue
Edwardsville, IL  62025-0510                         Chicago, IL 60611
618  656-0184                                        312  923-2776
618  656-1364 (fax)                                  312  840-7776 (fax)

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

**ERIC WILL, et al.,**

      **Plaintiffs,**

**v.**

**GENERAL DYNAMICS CORPORATION,**
**FIDUCIARY ASSET MANAGEMENT,**
**LLC (f/k/a Fiduciary Asset Management**
**Company), and C.D. WALBRANDT, INC.**
**(f/k/a Fiduciary Asset Management**
**Company),**

      **Defendants.**

**Case No. 06-698-GPM**

**Judge G. Patrick Murphy**

**Mag. Judge Clifford J. Proud**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 4, 2008, I electronically filed General Dynamics

Corporation's Memorandum of Law in Support of Its Motion For Summary Judgment using the

CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Charles H. Morgan | Jerome J. Schlichter    Kelley A. Weekes |
| Stanley G. Schroeder | Daniel V. Conlisk    Anne-Marie Berg |
| Matthew B. Robinson | Heather Lea |
| ATTORNEYS FOR FAMCO | Troy A. Doles |
| | Kathy Wisniewski |
| | Ryan Wallis |
| | ATTORNEYS FOR PLAINTIFFS |

I hereby further certify that as of January 4, 2008, there are no non-registered participants

required or entitled to receive service in this action.

Respectfully submitted,
s/  Troy A. Bozarth
HEPLER, BROOM, MACDONALD,
   HEBRANK, TRUE & NOCE, LLC
Two Mark Twain Plaza
103 West Vandalia St., Suite 300
Edwardsville, IL  62025-0510
Troy.Bozarth@heplerbroom.com