# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ERIC WILL, RICHARD COTTERMAN, and DANIEL KUCZON, on behalf of the General Dynamics Corporation Hourly Savings and Stock Investment Plan, the General Dynamics Corporation Savings and Stock Investment Plan, and on behalf of all others similarly situated, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No: 3:06-cv-698- GPM |
| v. | ) ) | Judge G. Patrick Murphy |
| GENERAL DYNAMICS CORPORATION, FIDUCIARY ASSET MANAGEMENT, LLC (f/k/a Fiduciary Asset Management Company), and C.D. WALBRANDT, INC. (f/k/a Fiduciary Asset Management Company), DAVID H. FOGG, CHARLES D. WALBRANDT, JOSEPH E. GALLAGHER, WILEY ANGELL, JAMES CUNNANE, JR., MOHAMMED RIAD, THE GENERAL DYNAMICS BENEFIT PLANS AND INVESTMENT COMMITTEE, JAY L. JOHNSON, JOHN M. KEANE, ROBERT WALMSLEY, DEBORAH J. LUCAS and PIPER JAFFRAY COMPANIES | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Magistrate Judge Clifford J. Proud |
| Defendants. | ) | |

## SECOND AMENDED DIRECT ACTION AND CLASS ACTION COMPLAINT

Plaintiffs Eric Will, Richard Cotterman and Daniel Kuczon, for their Second Amended Representative and Class Action Complaint, state as follows:

1.     This case is brought by:  Plaintiff Eric Will, on behalf of the General Dynamics Corporation Hourly Savings and Stock Investment Plan (the "Hourly Plan") and on behalf of all others similarly situated; and Plaintiffs, Richard Cotterman and Daniel Kuczon, on behalf of the General Dynamics Corporation Savings and Stock Investment Plan (the "Salaried Plan") and on behalf of all others similarly situated.

2.      Plaintiffs seek relief under the Employee Retirement Income Security Act ("ERISA) §§ 502(a)(2) and (a)(3), (29 U.S.C. §§ 1132(a)(2), (a)(3)), to recover the losses suffered by the Hourly Plan and the Salaried Plan, (collectively "the Plans), and to obtain injunctive and other equitable relief for the Plans from Defendants who have breached their fiduciary duties under ERISA.

### PARTIES, JURISIDCTION, AND VENUE

#### <u>Plaintiffs</u>

3.      Eric Will is a resident of Marion, Illinois, and is a participant in the Hourly Plan.

4.      Richard Cotterman is a resident of Virden, Illinois, and is a participant in the Salaried Plan.

5.      Daniel Kuczon is a resident of San Diego, California, and is a participant in the Salaried Plan.

#### <u>Defendants</u>

6.      General Dynamics Corporation ("General Dynamics") is a Delaware corporation, and is headquartered in Falls Church, Virginia.

7.      General Dynamics is subject to personal jurisdiction in this judicial district as it is conducting, and has conducted business, in southern Illinois within this judicial district.

8.      General Dynamics is a named fiduciary of the Hourly Plan and the Salaried Plan, and is the Administrator and Sponsor of those Plans pursuant to ERISA §§ 3(16)(A) and (B), 29 U.S.C. § 1002(16)(A) and (B).

9.      Defendant David H. Fogg is the Vice President and Treasurer of General Dynamics, is a designated fiduciary of the Plans, had authority to exercise discretion regarding the management of the Plans, and is one of the individuals designated by General Dynamics to

sign documents on behalf of the Plans and General Dynamics as Administrator and Sponsor of those Plans.

10.     Fiduciary Asset Management, LLC and C.D. Walbrandt, Inc. each formerly did business under the name Fiduciary Asset Management Company (hereinafter all three entities are jointly referred to as "FAMCo"), and are registered to do business in Missouri and have offices and a registered agent for service of process in that state.

11.     FAMCo is subject to personal jurisdiction in this judicial district as it is conducting, and has conducted business, in southern Illinois within this judicial district.

12.     FAMCo was retained by General Dynamics in 1994 to act as Investment Administrator or consultant of the Plans and continues to serve in such a role through the present time.

13.     As Investment Administrator or consultant of the Plans, FAMCo had discretionary authority to designate investment managers for the Plans, to review the performance of investment managers of the Plans, and to make specific recommendations regarding the retention and replacement of investment managers of the Plans. FAMCo's specific recommendations regarding the designation, retention and replacement of investment managers of the Plans were routinely implemented without substantial consideration of alternatives to FAMCo's recommendations by any other persons or entities. FAMCo has acted and continues to act as a fiduciary of the Hourly Plan and the Salaried Plan under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

14.     Defendant Charles D. Walbrandt was Vice President and Treasurer at General Dynamics and responsible for administering the investments of the Plans at General Dynamics until 1994 when he co-founded FAMCo. At all relevant times, Defendant Walbrandt held a substantial ownership interest in FAMCo. From FAMCo's inception in 1994 until 2009

3

Defendant Walbrandt was the Chief Executive Officer and Chief Investment Officer of FAMCo. Defendant Walbrandt is currently the Chairman of FAMCo. As such, Defendant Walbrandt is a party in interest and is subject to disgorgement of profits attained through prohibited transactions under ERISA.

15.     Defendant Joseph E. Gallagher was employed at General Dynamics and was responsible for administering investments of the Plans at General Dynamics until 1994 when he co-founded FAMCo, At all relevant times, Defendant Gallagher held a substantial ownership interest in FAMCo, and has been FAMCo's Executive Managing Director, Senior Portfolio Manager, Chief Operating Officer, and Chief Compliance Officer. As such, Defendant Gallagher is a party in interest and is subject to disgorgement of profits attained through prohibited transactions under ERISA.

16.     Defendant Wiley Angell was employed at General Dynamics and was responsible for administering investments of the Plans at General Dynamics until 1994 when he co-founded FAMCo. Since at least 2009, Defendant Angell has been FAMCo's President and Chief Executive Officer. Upon information and belief, at all relevant times, Defendant Angell has held a substantial ownership interest in FAMCo. As such Defendant Angell is a party in interest and is subject to disgorgement of profits attained through prohibited transactions under ERISA.

17.     Defendant James Cunnane, Jr. is FAMCo's Chief Investment Officer. Since 1996, Defendant Cunnane has been a portfolio manager for FAMCo. Upon information and belief, at relevant times, Defendant Cunnane has held a substantial ownership interest in FAMCo. As such Defendant Cunnane is a party in interest and is subject to disgorgement of profits attained through prohibited transactions under ERISA.

18.     Defendant Mohammed Riad is an Executive and is a Senior Portfolio Manager for FAMCo. He has been employed by FAMCo since 1999. Upon information and belief, at relevant

times, Defendant Riad has held a substantial ownership interest in FAMCo. As such Defendant Riad is a party in interest and is subject to disgorgement of profits attained through prohibited transactions under ERISA.

19.     Defendants Walbrandt, Gallagher, Angell, Cunnane, and Riad are hereinafter referred to as "FAMCo Individual Defendants."

20.     Defendant Piper Jaffray Companies ("Piper Jaffray") is a Delaware corporation with its principal place of business in Minnesota and has a registered agent for service of process in that state.

21.      Piper Jaffray is subject to personal jurisdiction in this judicial district as it is conducting, and has conducted business, in southern Illinois within this judicial district.

22.     Upon information and belief, at relevant times, including the current time, Defendant Piper Jaffray has held a substantial ownership interest in FAMCo and has received proceeds as a result of the conduct of FAMCo. As such Defendant Piper Jaffray is a party in interest and is subject to disgorgement of profits and distributions attained through prohibited transactions under ERISA.

23.     The Board of Directors of General Dynamics has established the General Dynamics Benefit Plans and Investment Committee ("BPIC"). At all relevant times herein, Defendant BPIC was responsible for establishing, modifying, and monitoring compliance with the investment policies of the Plans, ensuring and monitoring the appropriateness and the performance of investment managers of the Plans, and approving and monitoring the terms and conditions of the management of assets of the Plans by investment managers.

24.     Upon information and belief, Defendant Jay L. Johnson became a member of the Board of Directors of General Dynamics and the BPIC in 2003. Upon information and belief, Defendant Johnson attended his first meeting of the BPIC as a BPIC member on or about June 4,

2003. As a member of the BPIC, Defendant Johnson assumed the responsibility to monitor the arrangements between investment service providers and the Plans and to cure and/or take affirmative steps to remedy any existing breaches of fiduciary duty related to investment service providers of the Plans, and thus was a fiduciary to the Plans.

25.     Upon information and belief, Defendant John M. Keane became a member of the Board of Directors of General Dynamics and the BPIC in 2004. Upon information and belief, Defendant Keane attended his first meeting of the BPIC as a BPIC member on or about March 3, 2004. As a member of the BPIC, Defendant Keane assumed the responsibility to monitor the arrangements between investment service providers and the Plans and to cure and/or take affirmative steps to remedy any existing breaches of fiduciary duty related to investment service providers of the Plans, and thus was a fiduciary to the Plans.

26.     Upon information and belief, Defendant Robert L. Walmsley became a member of the Board of Directors of General Dynamics and the BPIC in 2004. Upon information and belief, Defendant Keane attended his first meeting of the BPIC as a BPIC member on or about June 2, 2004. As a member of the BPIC, Defendant Walmsley assumed the responsibility to monitor the arrangements between investment service providers and the Plans and to cure and/or take affirmative steps to remedy any existing breaches of fiduciary duty related to investment service providers of the Plans, and thus was a fiduciary to the Plans.

27.     Upon information and belief, Defendant Deborah J. Lucas became a member of the Board of Directors of General Dynamics and the BPIC in 2006. Upon information and belief, Defendant Lucas attended her first meeting of the BPIC as a BPIC member on or about March 1, 2006. As a member of the BPIC, Defendant Lucas assumed the responsibility to monitor the arrangements between investment service providers and the Plans and to cure and/or take

affirmative steps to remedy any existing breaches of fiduciary duty related to investment service providers of the Plans, and thus was a fiduciary to the Plans.

28.    Defendants Fogg, Johnson, Keane, Walmsley, and Lucas are hereinafter referred to as "General Dynamics Individual Defendants."

## Jurisdiction and Venue

29.    This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. §1132(e)(1)(2).

30.    Venue is proper in this Court pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) because General Dynamics may be found in this District, and some of Defendants' breaches of fiduciary duty took place in this District.

## GENERAL BACKGROUND INFORMATION

### The Plans

31.    The Hourly Plan and the Salaried Plan are "defined contribution plans" as set forth in ERISA § 3(34), 29 U.S.C. § 1002(34), and contain or are part of an "eligible individual account plan" under ERISA § 407(d)(3)(A), 29 U.S.C. §1107(d)(3)(A).  The Hourly Plan and the Salaried Plan are each the type of retirement plans commonly referred to as a "401(k) Plan."

32.    Certain employees of General Dynamics are given the opportunity to participate in the Hourly Plan and/or the Salaried Plan, and General Dynamics matches a portion of the money contributed by participants in each of the Plans.

33.    The Hourly Plan and the Salaried Plan were each established, and are operated, under a written Plan document.

34.    The assets of the Hourly Plan and the Salaried Plan are combined into a single trust fund known as the General Dynamics Corporation Savings & Stock Investment Plans Master Trust ("Master Trust").

35.     The Master Trust Agreement is part of, and incorporated into, the Plan document for each of the Plans.

36.     The Master Trust enables the Hourly Plan and the Salaried Plan to access common investment options or funds, and to share the services of Master Trust recordkeepers, investment managers, consultants, and other service providers.

### FAMCo

37.     In 1994, General Dynamics moved its headquarters from St. Louis, Missouri to Virginia.

38.     FAMCo was founded in June, 1994, at which time it was staffed and managed by former employees of General Dynamics.

39.     Upon its incorporation, FAMCo's managerial employees, including Charles D. Walbrandt, Joseph E. Gallagher and Wiley Angell, were the same individuals who, in their roles as employees of General Dynamics, had been responsible for administering the Hourly Plan and the Salaried Plan, and who had orchestrated the proposal to outsource the Plans' administration to FAMCo.

40.     Beginning in 1994, when General Dynamics outsourced its "trust investment operations" division to FAMCo, General Dynamics shifted the ongoing operating expenses of its General Dynamics corporate defined benefit pension plan to the Master Trust to the detriment of the Plans, their participants and beneficiaries.

41.     As part of this shift of expenses, the Defendants Walbrandt, Gallagher, and Angell changed their status from being salaried employees to owners of FAMCo, an investment management business handling the Plans' assets with asset-based payments.

42.     Concurrent with FAMCo's founding, or shortly thereafter, and despite lack of any operational experience by FAMCo as a business, General Dynamics entered into an agreement

with FAMCo under which FAMCo was retained to act as Investment Administrator or consultant of the Hourly Plan and the Salaried Plan.

43.     The agreement General Dynamics made with FAMCo as Investment Administrator or consultant was given with no bids or requests for proposals, and resulted in FAMCo and its principals who were former employees and friends of General Dynamics executives, being handed as investment consultants over $2 billion of assets.

44.     General Dynamics delegated to FAMCo fiduciary duties owed by General Dynamics to the Hourly Plan and the Salaried Plan, and their participants and beneficiaries.

45.     The duties delegated by General Dynamics to FAMCo included, but were not limited to:  allocating assets among investment managers and insurance carriers; designating investment managers; entering into agreements on behalf of General Dynamics with investment managers to invest Plan assets; directing the trustee to add and remove investment portfolios in a securities lending program; directing the trustee to enter into agreements as are necessary to implement investment in futures contracts and options for futures contracts; communicating investment policies to investment managers; and directing the trustee to distribute funds for payment of fees and expenses of investment managers.

46.     FAMCo exercised discretionary authority over, and had discretionary control of, the management of the Hourly Plan and the Salaried Plan and the disposition of the Plans' assets; it had the authority and responsibility to render, and did render, investment advice for a fee and/or other compensation with respect to the assets of the Plans; and it had discretionary authority and discretionary responsibility in the administration of the Plans.

47.     At the time it was retained by General Dynamics, FAMCo, as a corporation, had no history of administering the investments of 401(k) Plans, nor any track record of successful investing.

48.     Prior to retaining FAMCo, General Dynamics did not accept requests for proposals or undertake any other competitive process to determine whether FAMCo was best suited to administer and operate the Hourly Plan and the Salaried Plan.

49.     FAMCo's retention as Investment Administrator or consultant of the Hourly Plan and the Salaried Plan, and General Dynamics' decision to delegate fiduciary duties to it, would not have occurred if not for the personal relationships between the employees of General Dynamics and FAMCo.

50.     FAMCo exercised the authority given to it by General Dynamics and designated itself as investment manager or recommended itself as investment manager and such recommendation was rubber stamped by General Dynamics on at least five separate occasions, thereby substantially increasing its assets under management and its profits through the investment management fees it charged to the Plans.

51.     FAMCo and the FAMCo Individual Defendants used the retirement assets of the Plan participants, including the Plaintiffs, as seed money for their for-profit business, which they later sold to Piper Jaffray for $57.6 million, plus additional payments to be made in 2009 and in 2010.

## DIRECT ACTION ON BEHALF OF THE PLANS

52.     Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a), Plaintiffs, as participants in the respective Plans, bring this action directly on behalf of the Plans, seeking all relief to which the Plans are entitled for the breaches of fiduciary duty set forth herein. ERISA § 502(a)(2) expressly authorizes any plan participant to bring an action against a fiduciary who has violated ERISA § 409.

## REPRESENTATIVE/CLASS ALLEGATIONS

53.    In the alternative to bringing this action directly on behalf of the Plans, under FED.R.CIV.P. 23, Plaintiffs bring this action as individual representatives of the class of the Plans' participants and beneficiaries as set forth in Paragraph 55, seeking all relief to which the Plans and the Plans' participants and beneficiaries are entitled for the breaches of fiduciary duty set forth herein.

54.    Prior to filing suit, Plaintiffs did not make demand on the fiduciaries of the Hourly Plan and the Salaried Plan to pursue a similar action on behalf of the Plans because such fiduciaries are the actual perpetrators of the wrongs outlined herein and thus such demand would be futile.  Plaintiffs likewise made no demand on the Secretary of Labor to pursue the claims herein because, due to the complex and widespread practices challenged herein and the limited resources available to the Secretary, Plaintiffs believed it would be futile to make such a demand.

55.    As an alternative to a direct action as set forth in Paragraph 52, Plaintiffs bring this action pursuant to FED.R.CIV.P. 23 of the Federal Rules of Civil Procedure, on behalf of themselves and the following Class:

> All persons, *excluding the Defendants, and other individuals who are or may be liable for the conduct described in this Complaint,* who, since January 1, 1994, are or were participants or beneficiaries of the Plans and who are, were, or may have been affected by the conduct set forth in this Complaint, as well as those who will become participants or beneficiaries of the Plan in the future.

56.    The Class is so numerous that joinder of all members is impracticable as there are at least 17,644 participants in the Hourly Plan and 47,647 participants in the Salaried Plan.

57.    There are questions of fact and law common to Class including, but not limited to, the following:

a.      whether General Dynamics, the BPIC, and the General Dynamics Individual Defendants exercised the proper amount of care in selecting, monitoring and retaining FAMCo as Investment Administrator or consultant of the Plans, in delegating fiduciary responsibilities to FAMCo, maintaining that delegation of authority to FAMCO, and in monitoring FAMCo's performance;

b.      whether General Dynamics benefited at the expense of the Plans and Plan participants and beneficiaries by subsidizing the ongoing operating expenses of its pension plan with the assets of the Master Trust thereby reducing the cost of its defined benefit plan and passing on higher costs to the Plans, their participants and beneficiaries;

c.      whether the affirmative representations and omissions made in the uniform documents provided to all Plan participants and beneficiaries would lead a reasonable person to believe they were paying only for the expenses of the Plans and not subsidizing the expenses of General Dynamic's pension plan;

d.      whether the omissions made in the uniform documents provided to all Plan participants and beneficiaries would lead a reasonable person to believe that FAMCo did not engage in self-dealing and designate itself as investment manager for funds containing Plan assets on at least five separate occasions or monitor its own performance;

e.      whether General Dynamics benefited at the expense of the Plans and their participants and beneficiaries by entering into a scheme with Dodge & Cox under which General Dynamics obtained a more favorable rate for the

fees it had to pay for <u>its</u> corporate-sponsored pension plan at the expense of the Hourly Plan and the Salaried Plan;

f.      whether FAMCo's performance of dual functions as Investment Administrator or consultant and investment manager of assets of the Plans involved conflicts of interest, self-dealing, prohibited transactions, or other violations of ERISA given that FAMCo designated itself as investment manager on at least five separate occasions;

g.      whether the BPIC, or any members of the BPIC, breached their fiduciary duties by failing to monitor and/or remedy FAMCo's conflicts of interest, self-dealing, prohibited transactions, or other violations of ERISA;

h.      whether the Plans paid unreasonably excessive recordkeeping and administrative fees;

i.      whether there were additional revenue streams available which General Dynamics, the BPIC, the General Dynamics Individual Defendants, FAMCo, and the FAMCo Individual Defendants failed to capture for the benefit of the Plans and their participants and beneficiaries;

j.      whether General Dynamics, the BPIC, the General Dynamics Individual Defendants, and FAMCo failed to prudently monitor the securities lending arrangement of the Plans;

k.      whether General Dynamics' and FAMCo's acts and omissions constituted any breach of fiduciary duty; and

l.      whether General Dynamics, FAMCO and/or the FAMCo Individual Defendants, and Piper Jaffray should be required to disgorge profits received by them;

     m.      whether General Dynamics, the BPIC, and the General Dynamics Individual Defendants are jointly and severally liable for FAMCo's self-dealing and should be required to disgorge all profits made through self-dealing.

58.     The named Plaintiffs' claims are typical of those of the members of the Class in that General Dynamics and FAMCo owed the same duties to all of them, and a breach of fiduciary duty as to one class member constitutes a breach of duty as to all since the duties owed are to the Plans as a whole.

59.     Plaintiffs are adequate representatives of the Class as they are familiar with the claims made herein, and have committed to a vigorous prosecution of this case. There can be no intra-class conflicts since all Class members have the same interest in recovering any and all losses and returns of sums received for the Plans.  In addition, Plaintiffs have retained competent counsel, well versed in class action and ERISA litigation, to represent them in this case.

60.     Class certification is appropriate under FED.R.CIV.P. 23(b)(1) in that, in the absence of certification:  there is a risk of inconsistent adjudications with respect to individual class members; and, in addition, adjudications as to one class member could be dispositive of the interests of all.

61.     Class certification is also appropriate under FED.R.CIV.P. 23(b)(2), as General Dynamics and FAMCo have acted on grounds generally applicable to the Class as a whole, making final injunctive and declaratory relief appropriate.

62.     The Class can also be certified under FED.R.CIV.P. 23(b)(3) as the common issues set forth herein predominate over any individual issues (if they even exist), and a class action is the superior method for resolving this controversy which involves wrongdoing to the Plans as a whole, and all of their participants and beneficiaries.

## COUNT I – BREACH OF FIDUCIARY DUTY
**(Against FAMCo and FAMCO Individual Defendants for Self-Dealing and Against General Dynamics, the BPIC, and the General Dynamics Individual Defendants for Allowing and Participating in FAMCo's Self-Dealing)**

63. Plaintiffs adopt and incorporate herein by reference Paragraphs 1 through 62 of their Second Amended Complaint, as though fully set forth herein.

64. General Dynamics, the BPIC, and the General Dynamics Individual Defendants, as fiduciaries of the Plans, owed a duty to the Plans and their participants and beneficiaries, including Plaintiffs, to operate the Plans prudently and in the best interest of the Plan participants and beneficiaries.

65. Under ERISA §§ 404(a) and 405, the fiduciary duties of General Dynamics, the BPIC, and the General Dynamics Individual Defendants encompassed the duties to:  evaluate and monitor those retained to administer investments of the Master Trust and/or those to whom it delegated discretionary authority, and to cure or otherwise remedy any breaches of fiduciary duties related thereto; conduct themselves with the utmost good faith, loyalty and fidelity to the Plans and Plan participants and beneficiaries and to cure or otherwise remedy prior failures to do so; act with the sole purpose of advancing the interests of the Plan, its participants and beneficiaries and to cure or otherwise remedy prior failures to do so; scrupulously avoid all self-interest, duplicity or deceit, and to prevent, monitor and cure or otherwise remedy any self-interest, duplicity or deceit by investment service providers of the Plans.

66. In selecting and retaining FAMCo as Investment Administrator or consultant of the Plans, and in allowing FAMCo to continue as Investment Administrator or consultant for, and fiduciary of, the Plans, General Dynamics, the BPIC, and the General Dynamics Individual Defendants breached their fiduciary duties in one or more of the following ways:

    a. contracted with FAMCo without consideration of objective criteria that are required from a prospective plan investment administrator or

consultant, such as proof of an adequate amount of assets under management, or a track record as a separate firm for administrating and managing investments;

b.      retained FAMCo as Investment Administrator or consultant when, as a corporation, FAMCo did not possess objective qualifications competitive with other potential investment administrators or consultants in the financial services market with track records of holding positions administrating assets on the scale of those in the Hourly Plan and the Salaried Plan;

c.      contracted with, and retained FAMCo as Investment Administrator or consultant and investment manager of the Plans without issuing an invitation to bid to competitors of FAMCo before retaining FAMCo to perform such services for the Plans, and without evaluating competitors to ensure that the most qualified and economic investment administrator or consultant and investment manager was retained for the Plans;

d.      failed to verify and monitor, independently from representations of FAMCo, length of track record, investment performance, and other representations made by FAMCo regarding itself and its performance as an investment manger of the Plans;

e.      failed to diligently and critically compare FAMCo's performance to that of other potential investment administrators or consultants and investment managers on a periodic and ongoing basis;

f.      failed to apply standards and appropriate processes of evaluating the performance of FAMCo that would customarily be applied to an

investment administrator or consultant or an investment manager in charge of assets on the scale of those in the Plans;

g.     failed to periodically compare FAMCo's performance to the benchmarks established by the market for retirement plan services;

h.     delegated fiduciary duties to FAMCo despite the lack of any objective demonstration that FAMCo could properly fulfill those duties;

i.     permitted FAMCo to exercise fiduciary duties to select investment managers and allocate assets among them for FAMCo's own benefit and failed to cure or otherwise remedy such self-dealing by FAMCo;

j.     failed to engage in periodic, rigorous evaluations of FAMCo's performance to ensure that it was fulfilling its fiduciary obligations;

k.     failed to inform the participants and beneficiaries of the Plans that retaining FAMCo to administer the Plan would benefit those former management employees;

67.    As a result of breaches of fiduciary duties by General Dynamics, the BPIC, and the General Dynamics Individual Defendants in selecting, retaining, and continuing to use FAMCo and allowing FAMCO's self-dealing, the Hourly Plan and the Salaried Plan, and their participants and beneficiaries were deprived of procedures to ensure the quality of the investment administrator or consultant and the investment managers of the Plans;

68.    Under ERISA § 404(a)_FAMCo and the FAMCo Individual Defendants, as fiduciaries of the Plans, owed a duty to the Plans and their participants and beneficiaries, including Plaintiffs, to operate the Plans prudently and in the best interest of the Plans, their participants and beneficiaries.

69.     Under ERISA § 404(a), the fiduciary duties owed by FAMCo and the FAMCo Individual Defendants to the Plans, their participants and beneficiaries included the duty to refrain from self-dealing, to avoid conflicts of interest, to avoid prohibited transactions under ERISA § 406, and to scrupulously avoid all self-interest, duplicity, and deceit.

70.     FAMCo accepted from General Dynamics the fiduciary responsibility to designate investment managers for the investment options in the Plans and the responsibility to allocate assets among investment managers for the Plans.

71.     FAMCo, on the one hand, occupied a privileged position with the management structure of General Dynamics based on the fact that its management employees were all former employees and friends of General Dynamics; on the other hand, FAMCo was in an adverse position to Plan participants in negotiating its initial and ongoing involvement in the Hourly Plan and the Salaried Plan as its fees would, inevitably, be paid for by the Plans, and their participants and beneficiaries.

72.     By accepting a position of authority which allowed it to designate investment managers and allocate Plan assets among them, and by utilizing its favorable position with General Dynamics in negotiating its own compensation, FAMCo breached its fiduciary duties, and, in addition, it engaged in prohibited transactions in violation of ERISA § 406, in one or more of the following ways:

    a.     misrepresented its performance in its attempts to secure business from General Dynamics;

    b.     agreed to act, and did act, as Investment Administrator or consultant and <u>as</u> an investment manager for the Plans, the result of which was that FAMCo put itself in a position where it had the fiduciary authority to allocate Plan assets to its own management;

18

c.     exercised its delegated authority and allocated Plan assets to funds for which it garnered investment management fees;

d.     upon information and belief, exercised its delegated authority and designated itself investment manager for funds containing Plan assets on at least five separate occasions;

e.     upon information and belief, exercised its delegated authority and designated itself as one of the four investment managers for the Fixed Income Fund and later recommended two of the other four managers, thereby doubling its assets under management;

f.     upon information and belief, exercised its delegated authority and designated itself as investment manager for the U.S. Government Bond Fund;

g.     upon information and belief, exercised its delegated authority and designated itself as one of the three investment managers for the Diversified Equity Fund as evidenced in a memorandum from Defendant Walbrandt to Defendant Fogg and others stating his recommendation was to "Terminate First Quadrant ('FQC') as investment manager in the Diversified Fund" and "[h]ire Fiduciary Asset Management Co. ('FAMCO') as the successor investment manager to the portfolio now managed by FQC.";

h.     upon information and belief, exercised its delegated authority and designated itself as investment manager for the Balanced Fund;

i.    upon information and belief, exercised its delegated authority and designated itself as investment manager for the Bond Index/Enhanced Bond Fund;

j.    exercised its delegated authority to increase the amount of investment management fees it realized from the Plans as a result of designating itself as investment manager on at least five separate occasions;

k.    collected compensation through an expense ratio of total assets which resulted in its fees rising with the amount of assets invested in the Plans, rather than based on the value of the services actually rendered;

l.    negotiated for, and accepted, compensation that was not demonstrably based on undivided loyalty to the Plans, their participants and beneficiaries;

m.    used its employees' history of employment with General Dynamics to bargain for additional compensation to the detriment of the Plans, and their participants and beneficiaries;

73.    From 1997 to the present, Henry Eickelberg, Staff Vice President of Human Capital Processes (previously titled Staff Vice President of Benefit Programs) at General Dynamics, and General Dynamics employees working under his direction, have been responsible for the content and production of participant communications, including Summary Plan Descriptions for the Plans. Upon information and belief, prior to 1997, Mr. Eickelberg's predecessor in the position of Staff Vice President of Benefit Programs at General Dynamics was responsible for the content of such participant communications for the Plans.

74.    Since 1994 General Dynamics has regularly and repeatedly failed to disclose to Plan participants FAMCo's self-dealing. General Dynamics did not tell Plan participants that

FAMCo had the authority and exercised its authority to designate investment managers, including itself, for the Plans. General Dynamics affirmatively hid from Plan participants that FAMCo designated itself as investment manager for funds containing Plan assets on at least five separate occasions or that FAMCo monitored its own performance as an investment manager.

75.     As a result of FAMCo's self-dealing, benefiting itself at the expense of the Plans, and FAMCo's and the FAMCo Individual Defendants' failure to avoid conflicts of interest, FAMCo and the FAMCo Individual Defendants should be required to disgorge all profits made at the expense of the Plans and their participants and beneficiaries, to ensure that it does not profit by its own wrongful conduct.

76.     As a result of General Dynamics, the BPIC, and the General Dynamics Individual Defendants allowing, participating in, and failing to cure or otherwise remedy arrangements whereby FAMCo has engaged in self-dealing with assets of the Plans, their participants and beneficiaries, such Defendants are jointly and severally liable with FAMCo regarding FAMCo's disgorgement of all profits made at the expense of the Plans and their participants and beneficiaries.

**<u>COUNT II</u> – BREACH OF FIDUCIARY DUTY**
**(Against FAMCo and FAMCO Individual Defendants for Self-Dealing and Against General Dynamics, the BPIC, the General Dynamics Individual Defendants, and Piper Jaffray for Allowing and/or Participating in FAMCo's Self-Dealing)**

77.     Plaintiffs adopt and incorporate herein by reference Paragraphs 1 through 76 of their Second Amended Complaint, as though fully set forth herein.

78.     Under ERISA § 404(a) FAMCo and the FAMCo Individual Defendants, as fiduciaries of the Plans, owed a duty to the Plans and their participants and beneficiaries, including Plaintiffs, to operate the Plans prudently and in the best interest of the Plans, their participants and beneficiaries.

79.     Under ERISA § 404(a), the fiduciary duties owed by FAMCo and the FAMCo Individual Defendants to the Plans, their participants and beneficiaries included the duty to refrain from self-dealing, to avoid conflicts of interest, to avoid prohibited transactions under ERISA § 406, and to scrupulously avoid all self-interest, duplicity, and deceit.

80.     FAMCo accepted from General Dynamics the fiduciary responsibility to designate investment managers for the investment options in the Plans and the responsibility to allocate assets among investment managers for the Plans.

81.     By accepting a position of authority which allowed it to designate itself as investment manager on at least five separate occasions, FAMCo breached its fiduciary duties under ERISA § 404(a), and, in addition, it engaged in prohibited transactions in violation of ERISA § 406 and Department of Labor prohibitions, by wrongfully using the assets of the Plans, and their participants and beneficiaries, as seed money to develop its own for-profit business.

82.     FAMCo and the FAMCo Individual Defendants used the assets of Plan participants, including Plaintiffs, which they had obtained through self-dealing, to market FAMCo by touting General Dynamics as a client, so that they could build up their assets under management and reap excess profits from the sale to Piper Jaffray at a time when General Dynamics represented a major portion of its business.

83.     FAMCo and the FAMCo Individual Defendants sold FAMCo to Piper Jaffray in 2007 for $51.3 million plus an additional charge of $6.3 million in 2008, and additional payments to be made in 2009 and 2010.

84.     Upon information and belief, FAMCO has made distributions of income to Piper Jaffray.

85.     As a result of FAMCo's self-dealing, benefiting itself at the expense of the Plans, and FAMCo's and the FAMCo Individual Defendants' failure to avoid conflicts of interest,

FAMCo, the FAMCo Individual Defendants, and Piper Jaffray should be required to disgorge all sums received from FAMCo at the expense of the Plans and their participants and beneficiaries, including all monies received from the sale to Piper Jaffray, to ensure that FAMCo and the FAMCo Individual Defendants do not profit by their own wrongful conduct.

86.     General Dynamics, the BPIC, and the General Dynamics Individual Defendants, as fiduciaries of the Plans, owed a duty to the Plans and their participants and beneficiaries, including Plaintiffs, to operate the Plans prudently and in the best interest of the Plans, their participants and beneficiaries.

87.     Under ERISA §§ 404(a) and 405, the fiduciary duties of General Dynamics, the BPIC, and the General Dynamics Individual Defendants encompassed the duties to:  evaluate and monitor those retained to administer investments of the Master Trust and/or those to whom it delegated discretionary authority, and to cure or otherwise remedy any breaches of fiduciary duties related thereto; conduct themselves with the utmost good faith, loyalty and fidelity to the Plans and Plan participants and beneficiaries and to cure or otherwise remedy prior failures to do so; act with the sole purpose of advancing the interests of the Plans, their participants and beneficiaries and to cure or otherwise remedy prior failures to do so; scrupulously avoid all self-interest, duplicity or deceit, and to prevent, monitor and cure or otherwise remedy any self-interest, duplicity or deceit by investment service providers of the Plans.

88.     General Dynamics, the BPIC, and the General Dynamics Individual Defendants allowed FAMCO to engage in self-dealing in order to build its for-profit business using assets of the Plans and their participants, including Plaintiffs.

89.     As a result of breaches of fiduciary duties by General Dynamics, the BPIC, and the General Dynamics Individual Defendants in allowing FAMCO's self-dealing, the Hourly Plan and the Salaried Plan, and their participants and beneficiaries were deprived of procedures

23

to ensure the investment administrator or consultant and the investment managers of the Plans were acting solely in the interests of the Plans and their participants and beneficiaries;

90.     As a result of General Dynamics, the BPIC, and the General Dynamics Individual Defendants allowing, participating in, and failing to cure or otherwise remedy arrangements whereby FAMCo and the FAMCO Individual Defendants have engaged in self-dealing with assets of the Plans, such Defendants are jointly and severally liable with FAMCo and the FAMCo Individual Defendants for disgorgement of all profits made and sums received at the expense of the Plans and their participants and beneficiaries, including but not limited to all profits made in any sale to Piper Jaffray, and Piper Jaffray is liable for disgorgement of all sums received from FAMCo.

<u>**COUNT III – BREACH OF FIDUCIARY DUTY**</u>
**(Against General Dynamics, the BPIC, and General Dynamics Individual Defendants for Allowing the Pension Plan to Profit at the Expense of the Plans)**

91.     Plaintiffs adopt and incorporate herein by reference Paragraphs 1 through 90 of their Second Amended Complaint, as though fully set forth herein.

92.     Under ERISA § 404(a), General Dynamics, the BPIC, and the General Dynamics Individual Defendants, as fiduciaries of the Plans, owed a duty to the Plans and their participants and beneficiaries, including Plaintiffs, to operate the Plans prudently and in the best interest of the Plan participants and beneficiaries.

93.     Under ERISA § 404(a), the fiduciary duties owed by General Dynamics, the BPIC, and the General Dynamics Individual Defendants encompassed the duty to:  conduct themselves with the utmost good faith, loyalty and fidelity to the Plans and Plan participants and beneficiaries; act with the sole purpose of advancing the interests of the Plans, their participants and beneficiaries; and scrupulously avoid all self-interest, conflicts of interest, duplicity and deceit.

94.     Beginning in 1994 and continuing to the present, General Dynamics, the BPIC and the General Dynamics Individual Defendants have breached their fiduciary duties they owed to the participants and beneficiaries of the Plans, and committed prohibited transactions in violation of ERISA § 406, by allowing the subsidization of the ongoing operating expenses of General Dynamics' pension plan with the assets of the Plans. Specifically, outsourcing the administration of both the pension plan and the Plans resulted in a net decrease in annual costs to General Dynamics. However, instead of applying the savings pro rata to the percentage of assets in the Plans and in the pension plan, for which General Dynamics is liable, General Dynamics reduced its annual cost for the pension plan while increasing the annual cost to the Plan participants, including Plaintiffs. Thus, rather than sharing pro-rata in the net decrease in costs, the costs of the Plans actually increased, with the pension plan gaining the benefit of shifting its costs to the Plans plus all of the net decreases from the arrangement. This was an express violation of General Dynamics' duty to operate the Plans for the exclusive benefit of the Plans, their participants, including Plaintiffs, and beneficiaries.

95.     Under ERISA § 404(a), the fiduciary duties owed by General Dynamics, the BPIC, and the General Dynamics Individual Defendants to the Plans, and their participants and beneficiaries, encompassed a duty to fairly and accurately convey all information relevant to participation in the Plans.

96.     From 1997 to the present, Henry Eickelberg, Staff Vice President of Human Capital Processes (previously titled Staff Vice President of Benefit Programs) at General Dynamics, and General Dynamics employees working under his direction, have been responsible for the content and production of participant communications. Upon information and belief, prior to 1997, Mr. Eickelberg's predecessor in the position of Staff Vice President of Benefit Programs

at General Dynamics was responsible for the content of such participant communications for the Plans.

97.     Since giving its "trust investment operations" division to FAMCo to set up a for-profit business in 1994, General Dynamics, through participant communications prepared under the direction of Henry Eickelberg and his predecessor, has regularly and repeatedly made false statements regarding fees assessed against assets of the Plans. Specifically, quarterly participant communications expressly included false statements that expenses were assessed against Plan assets solely to provided services to the Plans, when such expenses actually subsidized expenses of General Dynamics' pension plan.

98.     As a result of General Dynamics, the BPIC, and the General Dynamics Individual Defendants breaching their fiduciary duties and engaging in prohibited transactions related to the subsidization of General Dynamics' pension plan through expenses assessed against the assets of the Plans, the Plans, their participants and beneficiaries suffered damages.

99.     General Dynamics, the BPIC, and the General Dynamics Individual Defendants further breached their fiduciary duties owed to the participants and beneficiaries of the Plans and committed prohibited transactions by participating in a scheme with Dodge & Cox Funds, an investment manager, under which General Dynamics directly benefited at the expense of the Plans.

100.    Under the scheme devised by General Dynamics, the BPIC, and the General Dynamics Individual Defendants with Dodge & Cox, Dodge & Cox was chosen to manage assets in General Dynamics' pension plan, the fees and expenses for which were paid by General Dynamics.

101.    The fee structure for Dodge & Cox was graduated, so that, for example, the fees on the first several million dollars invested in a pension plan were charged at a higher rate than

the next level of invested dollars, which in turn were charged fees at a higher rate than the next level.

102.    In 2005, General Dynamics retained Dodge & Cox to provide management services to one of the fund options available to participants in the Plans, in addition to its provision of management services to the pension plan.  In doing so, General Dynamics agreed, pursuant to discretionary actions of Fogg the BPIC, and the General Dynamics Individual Defendants, that the fees for Dodge & Cox's management of the Plans would be calculated before the fees for the pension plan.

103.    The result of General Dynamics' agreement to have Dodge & Cox charge the Plans first, before charging the pension plan, resulted in the higher fee rates being applied to the Plans, with the corporate-sponsored pension plan getting the benefit of the lower expense rates resulting from the graduated fee structure. Thus, the first level of higher rates for fees, which had in prior years, been borne by General Dynamics was now being borne by the Plans and their participants and beneficiaries.

104.    General Dynamics benefited from the scheme involving Dodge & Cox because, by the Plans being charged first with the highest level of fees, General Dynamics saved money for itself since it got the advantage of paying lower fees for its pension plan.

105.    General Dynamics, the BPIC, and the General Dynamics Individual Defendants violated their fiduciary duty to operate the Plans in the best interest of the Plans and their participants and beneficiaries and to act with the sole purpose of advancing the interests of the Plans and their participants and beneficiaries.

106.    General Dynamics, the BPIC, and the General Dynamics Individual Defendants violated their fiduciary duties and committed prohibited transactions by entering into the

aforesaid scheme with Dodge & Cox because General Dynamics received a direct, substantial, and tangible benefit at the expense of the participants and beneficiaries in the Plans.

107.    As a result of such breaches of fiduciary duties and prohibited transactions in violation of ERISA § 406, the participants and beneficiaries in the Plans were damaged by their payment of excessive and disproportionate fees in the Dodge & Cox Fund.

### COUNT IV – BREACH OF FIDUCIARY DUTY
**(Against General Dynamics for Causing and Allowing the Plans to Pay Unreasonable Fees and Expenses)**

108.    Plaintiffs adopt and incorporate herein by reference Paragraphs 1 through 107 of their Second Amended Complaint, as though fully set forth herein.

109.    Under ERISA § 404(a), General Dynamics, as the named fiduciary of the Hourly Plan and the Salaried Plan, owed a duty to the Plans and their participants and beneficiaries, including Plaintiffs, to operate the Plans prudently and in the best interest of the Plan participants and beneficiaries.

110.    The fiduciary duties owed by General Dynamics to the participants and beneficiaries of the Hourly Plan and the Salaried Plan, including Plaintiffs, encompassed the duty to:  ensure that the Plan fees and expenses were reasonable for the services provided; properly monitor the fees and expenses paid by the Plans; and ensure that plan participants and beneficiaries were receiving the full benefit of what they believed they were paying for.

111.    General Dynamics breached its fiduciary duties by failing to ensure that fees and expenses were reasonable and not excessive in that:  they allowed, and failed to prevent, excessive fees for recordkeeping services.

112.    The Plans, and their participants and beneficiaries were damaged by General Dynamics' breach of its fiduciary duty to ensure that Plan participants and beneficiaries paid only reasonable fees and expenses.

<u>COUNT V – BREACH OF FIDUCIARY DUTY</u>
**(Against General Dynamics, the BPIC, the General Dynamics Individual Defendants, FAMCo, and the FAMCo Individual Defendants for Failure to Capture Additional Income for Plans and/or for Failure to Prudently Monitor the Securities Lending Arrangement of the Plans)**

113.    Plaintiffs adopt and incorporate herein by reference Paragraphs 1 through 112 of their Second Amended Complaint, as though fully set forth herein.

114.    Under ERISA § 404(a), General Dynamics, the BPIC, the General Dynamics Individual Defendants, FAMCo, and the FAMCo Individual Defendants, as fiduciaries of the Plans, owed a fiduciary duty to the Plans, their participants, including Plaintiffs, and beneficiaries, to operate the Plans prudently and in the best interest of the Plans, their participants and beneficiaries.

115.    The fiduciary duties owed by General Dynamics, the BPIC, the General Dynamics Individual Defendants, FAMCo, and the FAMCo Individual Defendants to the Plans and their participants and beneficiaries, included a duty to:  understand and consider additional compensation streams which could benefit the Plans, and their participants and beneficiaries; maximize the benefits for the Plans, and their participants and beneficiaries; ensure that the Plans' fees and expenses were reasonable for the services provided; ensure that all transactions were free of conflicts of interest; ensure that any arrangements for additional compensation streams of the Plans were managed prudently and without unreasonable risks to the Plans; and conduct themselves with the utmost good faith, loyalty and fidelity.

116.    The operation of the Plans requires a number of services, including record-keeping, trading/brokerage costs, investment management and custodial/trustee services, for which service providers are paid fees.

117.    General Dynamics, the BPIC, the General Dynamics Individual Defendants, FAMCo, and the FAMCo Individual Defendants breached the fiduciary duties they owed to the

Plans, and their participants and beneficiaries, by failing to plan for, allow for, and capture, additional income for the benefit of the Plans which was available as a result of the involvement of service providers in the Plan operation, as well as from other avenues. This additional income to the Plans could have been realized if General Dynamics, the BPIC, the General Dynamics Individual Defendants, FAMCo, and the FAMCo Individual Defendants had done one or more of the following:

    a.    collected for the Plans the finders' fees that consultants of the Plans received from investment managers for the consultants' placement of Plan assets;

    b.    ensured that the interest and fees generated by Plan monies awaiting investment or redemption went to the Plans instead of being diverted to service providers;

    c.    captured the profits resulting from lending the securities belonging to the Plans, and ensuring that these payments were not diverted to custodians, investment managers, and mutual funds;

    d.    reaped for the Plans the compensation resulting from service providers' profiting on foreign currency exchange realized in connection with foreign investments, investment managers, and mutual funds; and/or

    e.    refrained from investing the assets of the Plans in more funds of the same type in which they invested, but which were suitable for securities lending transactions.

118.    In multi-billion dollar 401(k) plans, like those here, the failure of a fiduciary to capture additional revenue streams can result in a plan losing millions of dollars in compensation.

119.   Because of General Dynamics', the BPIC's, the General Dynamics Individual Defendants', FAMCo's, and the FAMCo Individual Defendants' acts of fraud and concealment, Plaintiffs and the members of the Class did not discover that they had breached their fiduciary responsibilities, duties, and obligations until shortly before the filing of, or during the course of, this litigation.

120.   As a result of General Dynamics', the BPIC's, the General Dynamics Individual Defendants', FAMCo's, and the FAMCo Individual Defendants' failure to plan for, allow for, and capture, the additional income streams outlined herein, the Plans and their participants and beneficiaries suffered a loss of income.

121.   As to the funds in which there was securities lending in the Plans, General Dynamics, the BPIC, the General Dynamics Individual Defendants, FAMCo, and the FAMCo Individual Defendants each were responsible for investigating, monitoring and understanding the securities lending arrangements whereby securities held in investment funds of the Plans were temporarily loaned to other investors for short term purposes. In those securities lending arrangements, each borrower secured a short-term loan of securities with collateral. The manager of the securities lending program then invested the collateral in a "collateral pool" from which the Plans received investment income.

122.   A prudently managed securities lending program for a retirement plan utilizes a collateral pool made up predominantly of short-term, liquid instruments, such as government bonds, without including therein unduly risky or potentially illiquid instruments.

123.   General Dynamics, the BPIC, the General Dynamics Individual Defendants and FAMCo authorized and approved of Plan assets being used in securities lending arrangements managed by Northern Trust Investments, N.A. and Northern Trust Company (hereinafter collectively "Northern Trust").

124.    Upon information and belief, Northern Trust imprudently invested the collateral of the securities lending arrangements in collateral pools that were illiquid, highly leveraged, and unduly risky, containing mortgage-backed securities and other securitized debt instruments. Such collateralized pools were imprudently risky for the investment of collateral in securities lending arrangements for retirement plans, such as the Plans, and safe, liquid investments of the collateral were easily available.

125.    As a result of Northern Trusts' unduly risky collateral pools used in securities lending arrangements utilizing Plan assets, and Defendants' breaches of fiduciary duty in failing to make sure that the Plans avoided such imprudent investments, the Plans have suffered substantial investment losses. The risk of such losses was in gross disproportion to the amount of income the Plans could have expected to earn on the collateral in the securities lending arrangements.

126.    General Dynamics, the BPIC, the General Dynamics Individual Defendants, FAMCo, and the FAMCo Individual Defendants failed to investigate, monitor and understand the unreasonable risks to the Plans of the collateral pools utilized in Northern Trusts' securities lending arrangements. General Dynamics, the BPIC, the General Dynamics Individual Defendants, FAMCo thereby breached their fiduciary duties to the Plans and their participants and beneficiaries to ensure that the securities lending arrangements were prudent and did not entail undue disproportionate risks for short-term collateralized loans in securities lending arrangements involving assets of the Plans.

127.    As a result of the breaches of fiduciary duties of General Dynamics, the BPIC, the General Dynamics Individual Defendants, FAMCo, and the FAMCo Individual Defendants regarding the securities lending arrangements of the Plans, the Plans have suffered substantial losses for which such Defendants are jointly and severally liable.

FOR RELIEF Plaintiffs, on behalf of the Plan and all similarly situated Plan participants and beneficiaries, respectfully request that the Court:

- declare that the Defendants have breached their fiduciary duties, and thus are personally liable to make good to the Plans all losses that the Plans incurred as a result of their wrongful conduct;

- award actual damages to the Plans;

- mandate that Defendants disgorge all fees and expenses charged to the Plans and their beneficiaries and participants;

- impose a constructive trust on any monies by which the Defendants were unjustly enriched as a result of their breaches of fiduciary duty;

- disgorge all profits from the sale of FAMCo to Piper Jaffray;

- remove the fiduciaries who have breached their fiduciary duties;

- permanently enjoin Defendants from breaching their fiduciary duties, including but not limited to enjoining FAMCo from serving in the dual roles of investment administrator or consultant and investment manager of the Plans;

- award to Plaintiffs and the Class their attorneys fees and costs pursuant to ERISA § 502(g) and/or the common fund doctrine;

- order equitable restitution;

- order the payment of interest to the extent it is allowed by law;

- award Plaintiffs their costs incurred herein; and

- grant any other and further relief the Court deems appropriate.

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, the undersigned declares under penalty of perjury that the foregoing <u>Second</u> Amended Complaint is based on a review of documents obtained through discovery during the course of this case, and consultation with experts in the industry, and that based on these sources of information, the information contained herein is true and correct to the best of her present knowledge, information, and belief.

<u>/s/ Jerome J. Schlichter</u>


Respectfully submitted,

**SCHLICHTER, BOGARD & DENTON**

By:   <u>/s/ Jerome J. Schlichter</u>
      Jerome J. Schlichter, 02488116
      jschlichter@uselaws.com
      Mark A. Kistler
      mkistler@uselaws.com
      120 W. Main Street, Suite 208
      Belleville, IL 62220

      100 S. Fourth Street, Suite 900
      St. Louis, Missouri 63102
      (314) 621-6115
      (314) 621-7151 (Fax)

      *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August __, 2009, I filed Plaintiffs' Second Amended Direct Action and Class Action Complaint with the clerk of the court using the CM/ECF system which will send notification of such filing(s) to the following:

Craig C. Martin
William Heinz
Daniel Winters
Amanda S. Amert
Reena R. Bajowala
Jenner & Block LLP
330 N. Wabash Avenue
Chicago, IL  60611

Larry E. Hepler
Troy A. Bozarth
Two Mark Twain Plaza
103 West Vandalia St, Suite 300
Edwardsville, IL 62025-0510

*Counsel for Defendant General Dynamics Corp*

Stanley G. Schroeder
Matthew B. Robinson
Charles H. Morgan
222 South Centrel Avenue, Suite 901
St. Louis, Missouri 63105

*Counsel for Fiduciary Asset Management, LLC and C.D. Walbrandt, Inc.*

/s/ Jerome J. Schlichter